STEVEN WARD vs. COMMONWEALTH.

Suffolk. December 6, 1989. - May 16, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, & GREANEY, JJ.

*Delinquent Child. Jurisdiction*, Delinquent child, Transfer hearing. *Practice, Criminal*, Transfer hearing. *Evidence*, Expert opinion.

The record of a hearing held pursuant to G. L. c. 119, § 61, supported the judge's conclusions that the juvenile defendant, charged with first degree murder, presented a significant danger to the public and was not amenable to rehabilitation as a juvenile, and that transfer of his case to the Superior Court for trial as an adult was warranted. [437-440]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 10, 1989.

The case was heard by *O'Connor*, J.

*Jay Blitzman*, Committee for Public Counsel Services (*John LaChance* with him) for the petitioner.

*Michael Fabbri*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. A judge of the Lowell Division of the District Court Department, Juvenile Session, after a hearing conducted pursuant to G. L. c. 119, § 61 (1988 ed.), dismissed the juvenile complaint, and ordered the juvenile (petitioner) to be arraigned on an adult complaint alleging murder. The petitioner subsequently was indicted for murder in the first degree. A judge in the Superior Court denied the petitioner's motion to dismiss. The petitioner then sought relief from a single justice of the Supreme Judicial Court for the county of Suffolk. G. L. c. 211, § 3 (1988 ed.). He now appeals from an order of the single justice affirming the denial of his motion to dismiss the Superior Court indictment. The petitioner challenges the District Court judge's conclusion that the petitioner presents a significant danger to the public and is not

amenable to rehabilitation as a juvenile. He claims that under the standards of G. L. c. 119, § 61, and under the guidelines in our case law, transfer of his case was improper. We disagree, and affirm the order of the single justice.

1. *Facts.* We summarize the facts as presented during the probable cause phase of the transfer hearing, about which there is no claim of error.

On the evening of September 18, 1988, the Lowell police found the body of a homeless man, in a pool of blood under the porch of a building located near the parking lot of the Lowell District Court. The seventy-four year old victim, Louis Pozyck, had been stabbed repeatedly. He was pronounced dead by a Middlesex County medical examiner at 11:55 P.M.

The police received information which led them to the home of the petitioner, who was sixteen years old at the time. The petitioner and his mother accompanied the officers to the police station, where they were apprised of their rights. The petitioner gave two statements, the second of which he said was more accurate. What follows is a summary of the second statement.

The petitioner left his house at approximately 5 P.M. on September 18, 1988, carrying a "butterfly knife." Later in the evening, after spending some time with some friends and then with his mother, he went downtown to look for a friend. He walked down a driveway near the court house, which he used as a short cut to a parking lot where some of his friends often gathered. At the end of the driveway, he saw a maroon motorcycle under the rear porch of a building. He walked over to look at the motorcycle and, while looking at it, heard a man tell him to "get lost." He looked around and saw a man lying against the building, under the porch. The petitioner told the man (the victim) to "shut up," and the victim said something to the effect of "shut up" or "get out of here," and called the petitioner a "punk." The petitioner walked over and kicked the victim in the face about four times. The victim started to say something else, and the petitioner took his knife out of his pocket. He held the knife in

his right hand and told the victim to shut up or he would stab him. The victim mumbled something which sounded like "go ahead." He was still on the ground. The petitioner stabbed the victim three times.

The petitioner then ran to an alley across the street from the parking lot. He put the knife back in his pocket and went over to the parking lot, where some youths were gathered. The petitioner took two of his companions aside and told them what he had done. He knew that the victim was still alive because he was moving when he last saw him. One of his friends did not want to be involved, but the other, identified only as Mike, told the petitioner that he should return to the scene and kill the victim so that he would not tell the police who had stabbed him. The petitioner hesitated, but Mike and another unidentified youth started walking toward the scene, so the petitioner went with them and showed them where the victim was lying. The victim was moving around, making noises, and bleeding from the nose. The petitioner opened the victim's shirt to determine how badly injured he was. The petitioner was unable to determine if the victim was mortally wounded. Mike had pulled out a kitchen knife which was bigger than the butterfly knife. Mike said, "Here's the knife, do it." The petitioner took the knife and stabbed the victim a number of times. According to the petitioner, "I stabbed him because Mike and I went back there to kill him, and after I looked at him Mike gave me the knife, so I did it."

Mike suggested that the petitioner set the victim on fire. The other companion lit a match, set a match book on fire, and threw matches at the victim, but they landed on the ground to the right and burned out. The victim was still making noises, and the petitioner thought he was still alive, "so [he] stabbed him again so he would die." The petitioner gave the knife back to Mike and they ran behind a nearby hotel. Soon after washing his hands in a nearby canal, the petitioner went home. The police arrived at his house that night.

2. *Propriety of the transfer.* General Laws c. 119, § 61, sets forth the requirements governing a transfer hearing. These requirements have been supplemented by guidelines delineated in our cases. In order for a child, alleged to have committed an offense between his fourteenth and seventeenth birthdays, to be transferred for adult proceedings, a judge must enter written findings based on clear and convincing evidence: (1) that "the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior, if any," and (2) that the child "is not amenable to rehabilitation as a juvenile." G. L. c. 119, § 61.[1] The judge must consider, but shall not be limited to, evidence of the following factors: "(a) the seriousness of the alleged offense; (b) the child's family, school and social history, including his court and juvenile delinquency record, if any; (c) adequate protection of the public, (d) the nature of any past treatment efforts for the child, and (e) the likelihood of rehabilitation of the child." G. L. c. 119, § 61.

We have stated that a "judge who makes the two written findings required by G. L. c. 119, § 61, must also make subsidiary findings indicating the basis for his conclusions concerning the two statutorily required findings. *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 282 (1976). These subsidiary findings may show consideration of the five enumerated statutory factors and the factors identified in our guidelines, *id.* at 282 n.14, although any single factor will rarely, if ever, be controlling. Cf. *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 282 (1976)." *Two Juveniles* v. *Commonwealth*, 381 Mass. 736, 741 (1980). The judge is not required to make

---

[1]The judge, before turning to the transfer issue, must find that probable cause exists to believe that the child has committed the offense. G. L. c. 119, § 61. In addition, the judge must establish that the child (1) "had previously been committed to the department of youth services as a delinquent child [and] has committed an offense against a law of the commonwealth which, if he were an adult, would be punishable by imprisonment in the state prison"; or (2) "has committed an offense involving the infliction or threat of serious bodily harm." G. L. c. 119, § 61. These issues are not contested on this appeal.

written findings regarding each enumerated factor in a checklist manner. *Id.*

"[A] judge has considerable discretion, within this statutory framework, to determine whether a child should be treated as an adult." *Commonwealth* v. *Matthews*, 406 Mass. 380, 383 (1990), quoting *A Juvenile* v. *Commonwealth*, *supra* at 282. "There is no specific requirement that a judge weigh these factors in a certain manner or achieve some predesigned balance. Any factor which bears on the protection of the public and the amenability of the child to treatment as a juvenile may be considered." *A Juvenile* v. *Commonwealth*, *supra* at 282.

We turn to the proceedings in this case. After an nine-day hearing, the judge made extensive and detailed findings of fact, which we conclude more than adequately met the statutory requirements and which followed the guidelines set forth in our cases. The judge's findings and conclusions reveal a thorough consideration of each and every statutory factor listed in G. L. c. 119, § 61. Each finding has a basis in the record.

The petitioner argues that the judge should not have discounted the petitioner's three expert witnesses, whose testimony and reports concluded that the petitioner was amenable to rehabilitation. The judge was not bound by the views of these experts. See *Commonwealth* v. *Watson*, 388 Mass. 536, 539 (1983). He was entitled to resolve the conflict between their testimony and that of the court-appointed expert by crediting the opinion of the latter.[2] See *Commonwealth* v. *Matthews*, *supra* at 386. The petitioner's argument that the court-appointed expert did not have a meaningful opportunity to make a fair evaluation of the petitioner's amenability to rehabilitation goes to the weight to be accorded the testimony, a question for the judge. See *id.* The mere fact that

[2]We add that it was within the judge's broad discretion to deem qualified the court-appointed expert, a psychiatrist at Danvers State Hospital who reviewed the petitioner's records from the Department of Social Services and the Department of Youth Services, and who interviewed the petitioner. See *Letch* v. *Daniels*, 401 Mass. 65, 66-68 (1987).

the petitioner mustered a more voluminous record supporting his view does not compel the judge to find for the petitioner. See *Commonwealth* v. *Costello*, 392 Mass. 393, 397 (1984) (Commonwealth was not required to produce expert testimony to prove that the petitioner was not amenable to rehabilitation).

The judge was entitled to discount to some degree the petitioner's favorable conduct in the secured facility of the Department of Youth Services, relying more heavily on his past disobedience of rules, his abuse of alcohol, his trouble at home, his unwillingness to cooperate with prior counseling efforts, and his "distaste for school and the entire educational process." In addition, the judge, who has had the opportunity to view the petitioner, was in a better position than we to determine whether the petitioner has made a sincere expression of remorse. The conclusions of the court-appointed expert support the judge's determination that the petitioner has not expressed "any genuine remorse for his deeds."

The petitioner argues that the judge placed undue emphasis on the severity of the alleged offense. Our reading of the findings does not reveal an overemphasis on the nature of the crime but, rather, shows a fair consideration of all of the statutory factors listed in G. L. c. 119, § 61. In addition, a judge may "attach substantial significance to the seriousness of the offense, as this does bear on both the danger to the public and an individual's prospects for rehabilitation. Seriousness of the offense is also included as an element in the statute, G. L. c. 119, § 61, and there is considerable precedent in favor of according this factor significant weight in the juvenile transfer process. *Two Juveniles* v. *Commonwealth*, *supra* at 743. *A Juvenile* v. *Commonwealth*, *supra* at 282." *Commonwealth* v. *Costello*, *supra* at 397.

The petitioner complains that the judge, while implying that the petitioner may have been eventually amenable to rehabilitation, nonetheless ordered a transfer because of his conclusion that treatment would take over two years and that the Division of Youth Services would not be likely to retain jurisdiction after the petitioner's eighteenth birthday. There

was no error. "The transfer statute only requires the judge 'to focus on the minor's potential for successful treatment *before* the age of majority within existing juvenile facilities.' *A Juvenile, supra* at 283 (emphasis supplied). See *Two Juveniles, supra* at 742; *Commonwealth* v. *Hill,* 387 Mass. 619, 622 (1982)." *Commonwealth* v. *Matthews, supra* at 387. There was sufficient evidence in the record to support the judge's conclusion that treatment would be necessary beyond the petitioner's eighteenth birthday.

The order of the single justice is affirmed.

*So ordered.*