BOWEN, Judge.
This is a consolidated appeal by four juveniles from orders of the juvenile court transferring them to circuit court for prosecution as adults in crimes involving kidnapping, rape, and robbery.
At 8:30 p.m. on August 23, 1990, Wanda Smith was walking towards her car in the parking lot of Bruno’s Supermarket on McGehee Road in Montgomery when she was accosted by four young black males. One of them brandished a gun and told her to get into her car. Instead, she screamed and ran, and the four youths ran away in the direction of Looney’s Skating Rink. Ms. Smith could not identify any of the appellants at the transfer hearing.
Lisa Nix was in the parking lot of Looney’s Skating Rink about 9:00 that night. She and her four-year-old son were walking to her car when she saw four young black males. One of them grabbed Ms. Nix by the hair, put a gun to her throat, and demanded money. One of the youths took her purse, which contained $18, removed her car keys, and asked which car was hers. Nix pointed out her vehicle, and three of the youths opened her car and got in. When the fourth attempted to pull her into the automobile, Ms. Nix grabbed her son and fled. At the transfer hearing, Nix testified that she recognized Rodney[1] as the assailant with the gun, but that she was unable to identify any of the other appellants.
Later that same evening, V.T. was opening the door to her car at 10:50 p.m. in the parking lot of the Delchamps store on Perry Hill Road when three black males approached her. One of them pointed a gun at her, told her to get into the car, and threatened to kill her if she said a word. She moved into the front passenger seat while one of the assailants positioned himself in the driver’s seat and the other two assailants sat in the back. The youths drove away with V.T. They stopped twice in isolated areas, where they took turns raping and sodomizing her. V.T. was left, naked, in a wooded area as the three assailants drove off in her automobile. At the transfer hearing, V.T. pointed out Rodney *532 as one of her assailants, but she was unable to identify any of the other appellants.
In the early morning hours of August 24, 1990, V.T. reported the offenses and gave the police the tag number and description of her vehicle. Law enforcement authorities spotted and pursued that automobile at 3:00 that same morning. During a high speed chase, V.T.’s car was wrecked, and three black males emerged from the disabled vehicle. The police apprehended one of them, Reginald, and the other two escaped.
After his arrest, Reginald gave the police a statement incriminating himself, Rodney, and Montoya in the kidnapping, rape, and robbery of V.T. The statement appears, in question-and-answer form, in the record before us. Reginald was not asked, nor did he mention, anything about the incidents involving Ms. Smith and Ms. Nix.
After learning that they were being sought by the police, Darryl and Montoya came to the juvenile section of the Montgomery Police Department on the afternoon of August 24,1990. Each was accompanied by a parent. Darryl made a statement to the police, implicating himself and the other three appellants in the offenses against Ms. Smith and Ms. Nix.
Rodney was “picked up on the streets”[2] and brought to the juvenile division of the police department. However, neither he nor Montoya made any statements to the police.
Darryl was charged with three offenses: the attempted kidnapping of both Ms. Nix and Ms. Smith, and the robbery of Ms. Nix. Reginald, Rodney, and Montoya were each charged with the same six offenses: the attempted kidnapping of Ms. Smith; the attempted kidnapping and the robbery of Ms. Nix; and the kidnapping, rape, and robbery of V.T.
I
At the transfer hearing, the juvenile court admitted, over objection by all four appellants, a report comparing the fingerprints lifted from V.T.’s automobile with the appellants’ known prints. The appellants objected on the grounds that the report was hearsay and that its admission denied them their rights to confront and to cross-examine the creators of the report, the officer who lifted the fingerprints from the car and the evidence technician who compared the “lifts” with the known prints. The juvenile court held that.hearsay was admissible at a juvenile transfer hearing and overruled the objections. That ruling constitutes error.
In O.M. v. State, 595 So.2d 514 (Ala.Cr.App.1991), this Court noted that “[evidence admissible over a hearsay objection may be inadmissible because it violates the right of confrontation and cross-examination.” O.M. v. State, 595 So.2d at 516. We held that “a juvenile has the rights of confrontation and cross-examination in a transfer hearing by virtue of Rules 11(H) and (I), Ala.R.Juv.P.,” and concluded that “an extrajudicial statement which violates the right of confrontation ... is, by virtue of [Ala.Code 1975,] § 12-15-66(b), inadmissible at a juvenile transfer hearing.” O.M. v. State, 595 So.2d at 519. As we observed in that case, the Confrontation Clause limits admissible hearsay in two ways:
“ ‘ “First, ... the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.” Second, once a witness is shown to be unavailable, “his statement is admissible only if it bears ‘adequate indicia of reliability.’ Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.” ’ ”
“Idaho v. Wright, 497 U.S. 805,-, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990) (quoting Ohio v. Roberts, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538-39, 65 L.Ed.2d 597 (1980)). See also Grantham v. State, *533 580 So.2d 58 (Ala.Cr.App.1991); Fortner v. State, 582 So.2d 581 (Ala.Cr.App.1990).”
O.M. v. State, 595 So.2d at 519.
Defense counsel elicited testimony that both the officer who made the fingerprint lifts and the evidence technician who performed the print comparison were still employed by the Montgomery Police Department. The prosecution did not show that either officer was “unavailable.” Therefore, the admission of the fingerprint comparison report was error because it denied the appellants their right to confront and cross-examine the witnesses against them. See Grantham v. State, 580 So.2d 53 (Ala.Cr.App.1991) (wherein this Court held that admission of toxicology report, admissible under public record exception to the hearsay rule, denied accused the right to confront and cross-examine toxicologist who did not testify).
A denial of the right of confrontation may, in some circumstances, constitute harmless error. Delaware v. Van Arsdall, 475 U.S. 673, 680-84, 106 S.Ct. 1431, 1436-38, 89 L.Ed.2d 674 (1986). In this case, the denial of the right was harmless as to Darryl, Rodney, and Reginald.
The improper admission of the fingerprint report was harmless as to Darryl because his fingerprints were not found on V.T.’s automobile and because he was not charged with any offense against V.T. The improper admission was harmless as to Rodney because V.T. identified Rodney as one of her assailants and that identification, alone, was sufficient to establish probable cause. The improper admission was also harmless as to Reginald, because Reginald’s statement, corroborated by testimony that Reginald was apprehended after he emerged from V.T.’s wrecked vehicle, established probable cause without the fingerprint evidence. However, the denial of confrontation was not harmless as to Montoya. Therefore, the transfer orders involving Montoya in the following three cases must be reversed: JU-88-0373.07 (kidnapping of V.T.), JU-88-0373.08 (robbery of V.T.), and JU-88-0373.09 (rape of V.T.).
II
All four appellants challenge the consolidation of their cases for a single probable cause hearing.
Neither the statutes relating to juvenile transfer proceedings nor the Rules of Juvenile Procedure address the issue of consolidation. Rule 1, Ala.RJuv.P., states that “[i]f no procedure is specifically provided in these rules or by statute, the Alabama Rules of Civil Procedure shall be applicable to the extent not inconsistent herewith.” Rule 42(a), Ala.R.Civ.P., sets out the following criterion for consolidation of civil cases:
“When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.”
The consolidation of these cases for jury trial would present problems under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). See Holsemback v. State, 443 So.2d 1371, 1379 (Ala.Cr.App.1983). However, while it might be beyond “the capacity of ... jurors to follow the court’s instructions and to collate and appraise the independent evidence against each defendant solely upon that defendant’s own acts,” Holsemback v. State, 443 So.2d at 1378, the juvenile court judge is presumed to perform that task as a matter of course. See Whisenhant v. State, 555 So.2d 219, 229 (Ala.Cr.App.1988), affirmed, Ex parte Whisenhant, 555 So.2d 235 (Ala.1989), cert. denied, — U.S.-, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990) (trial court is presumed to disregard inadmissible evidence in reaching its decision). We therefore find no error in consolidating these cases for purposes of determining probable cause.
III
We reject the challenges made by both Reginald and Darryl to the admissibility of *534 the statements they made while in custody at the juvenile section of the Montgomery Police Department.
Reginald claims that his statement was admitted in violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), because it was obtained after he requested an attorney.
The State’s evidence at the transfer hearing established that at about 6:40 a.m., Reginald was advised of his juvenile Miranda rights, signed a waiver, and made an oral statement to Corporal J.E. Scott of the Montgomery Police Department. When Scott mentioned getting a taped statement, Reginald asked for a lawyer and Scott stopped the interview. Sometime later that morning, Corporal Scott received word from another officer that Reginald “wanted to talk to” Scott again. Corporal Scott readvised Reginald of his rights. Then Reginald signed another waiver and gave a statement which was taped, transcribed, and admitted at the transfer hearing.
Once an accused has invoked his right to counsel, the Fifth Amendment prohibits the police from interrogating him further until he receives counsel or he “initiates further communication, exchanges, or conversations with the police.” Edwards v. Arizona, 451 U.S. at 484-85, 101 S.Ct. at 1885. When Reginald stated that he wanted to talk to Corporal Scott again, he initiated further communication with the police, and the admission of his statement did not violate the rule of Edwards. See also Minnick v. Mississippi, — U.S.-, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).
Darryl argues that his statement was admitted in violation of Rule 11, Ala. R.Juv.P. Citing Payne v. State, 487 So.2d 256 (Ala.Cr.App.1986), Darryl claims that the failure of the police to inform him of his rights in the presence of his father, and also the failure of the police to inform his father of those rights, rendered his statement inadmissible. In Payne, the parent was in the room with the child during interrogation. Although Darryl’s father was at the police station during the time Darryl was being interrogated, he was not physically present with Darryl when Darryl was informed of his rights, signed a waiver, and gave a statement.
There is no requirement in Alabama that a juvenile be advised of his rights in the presence of a parent. See Ash v. State, 424 So.2d 1381, 1386 (Ala.Cr.App.1982). Furthermore, a parent must be informed of the rights of the child only if the parent is physically present with the child during interrogation, O.M. v. State, 595 So.2d 514 (Ala.Cr.App.1991), or if the child is detained, Rule 11(C), Ala.R.Juv.P.
Even though Darryl was in “custody” for purposes of Rule 11(A), he was not “detained” within the meaning of Rule 11(C). “Taking a child into custody under part (A) [of Rule 11, Ala.R.Juv.P.] is clearly an entirely separate phase from placing the child into detention, which is covered by parts (B), (C), (D), and (E).” Carr v. State, 545 So.2d 820, 826 (Ala.Cr.App.1989) (emphasis in original). See also Chambers v. State, 497 So.2d 607, 610 (Ala.Cr.App.1986); Talley v. State, 483 So.2d 1369, 1371 (Ala.Cr.App.1985), cert. quashed, 483 So.2d 1372 (Ala.1986).
A child is “detained” within the meaning of Rule 11(C) only when he is formally admitted to a “detention or shelter care facility.” Compare Ala.Code 1975, § 12-15-56(2) (“A child may be taken into custody ... [fjor a delinquent act pursuant to the laws of arrest”) with Ala.Code 1975, § 12-15-58(a)(3) (“A person taking a child into custody shall, with all possible speed, ... [b]ring the child, if not released, to the intake office of probation services or deliver the child to a place of detention or shelter care”).
Darryl was advised of his right to confer with his father and he waived that right. Because he did not request his father’s presence, O.M. v. State, supra, and because his father was not, in fact, present for questioning, Payne, supra, the admission of Darryl’s statement did not violate Rule 11.
*535 IV
Darryl argues that the evidence against him was insufficient to establish probable cause.
Section 12-15-66(b), Ala.Code 1975, provides, in pertinent part, that “[a]n extrajudicial admission or confession made by the child out of court is insufficient to support a finding that the child committed the acts alleged in the petition unless it is corroborated by other evidence.”
Darryl’s statement related events which occurred in the parking lot of Looney’s Skating Rink on August 23 while Darryl was with Rodney. Lisa Nix testified to the same events and identified Rodney as one of the perpetrators. Nix’s identification of Rodney thus provided the “other evidence” to corroborate Darryl’s statement in cases JU-87-1374.13 (robbery of Ms. Nix) and JU-87-1374.14 (attempted kidnapping of Ms. Nix).
Darryl’s statement also related events which occurred in the parking lot of Bruno’s on August 23. Apart from Darryl’s admission, however, there was no other evidence connecting him with the attempted kidnapping of Smith, which occurred in the parking lot at Bruno’s. Therefore, the finding of probable cause in JU-87-1374.12 (attempted kidnapping of Ms. Smith) rests on Darryl’s uncorroborated statement, in violation of § 12-15-66(b), and must be reversed.
V
Although Reginald’s statement was admissible against Reginald, and Darryl’s statement was admissible against Darryl, neither of those statements should have been admitted against the other, or against Rodney and Montoya.
As we have pointed out in Part I of this opinión, the statement of a hearsay declarant is admissible over a Confrontation Clause objection if the prosecution first establishes that the declarant is “unavailable.” In Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the United States Supreme Court specifically reserved deciding the issue presented by this case: whether a codefendant who is never called to testify against the accused in a joint trial can be considered “unavailable” because, if he had been called, he would have invoked his Fifth Amendment privilege against self-incrimination. The dissenters in Lee reached the issue of “unavailability.” They concluded that
“[f]or all practical purposes, [the code-fendant] was unavailable as a prosecution witness. Although physically present in the courtroom, he clearly would have invoked his privilege against self-incrimination if called to the stand.... Indeed, it is precisely [the codefendant’s] Fifth Amendment privilege that brought the Confrontation Clause into this case in the first place: although the State ‘produced’ [the code-fendant] in court, his right not to testify against himself made him effectively unavailable for cross-examination by petitioner.”
Lee v. United States, 476 U.S. at 549-50, 106 S.Ct. at 2066-67 (Blackmun, J., joined by Burger, C.J., Powell, J., and Rehnquist, J., dissenting) (footnote omitted). We do not accept the dissenters’ assumption. We hold that unless the codefendant actually invokes the privilege, he has not been shown to be unavailable. Thus, we find that the admission of Reginald’s statement against Darryl, Montoya, and Rodney denied those three appellants the rights of confrontation and cross-examination. Likewise, the admission of Darryl’s statement against Reginald, Montoya, and Rodney denied those three the same rights.
However, we find that the denial of the right of confrontation by the admission into evidence of Reginald’s statement was harmless as to Darryl and Rodney, but not as to Montoya.
1) The admission of Reginald’s statement was harmless as to Darryl because Darryl was only charged with offenses involving Ms. Nix and Ms. Smith. Reginald’s statement concerned V.T. only.
2) The admission of Reginald’s statement was harmless to Rodney because, on the offenses against Ms. Nix and Ms. *536 Smith, the statement was silent. On the offenses against V.T., we find that the improper admission of Reginald’s statement was harmless because Rodney was identified in court by Y.T., and that identification was sufficient in and of itself to establish probable cause to believe that Rodney committed the charged offenses against Y.T.
3) The admission of Reginald’s statement was not harmless as to Montoya. Montoya was not identified by any of the three victims. He made no statement to the police. The fingerprint report connecting him to the offenses against V.T. were improperly admitted into evidence. See Part I of this opinion. Therefore, without Reginald’s statement, there was nothing to connect Montoya in the three offenses against V.T. Consequently, the transfer orders in cases JU-88-0373.07 (kidnapping of V.T.), JU-88-0373.08 (robbery of V.T.), and JU-88-0373.09 (rape of V.T.) must be reversed for this reason in addition to the reason stated in Part I of this opinion.
We find that the denial of the right of confrontation involved in the admission into evidence of Darryl’s statement to the police was harmless only as to Rodney.
1) Darryl’s statement was harmless as to Rodney for the offenses against Ms. Nix and V.T. because each of those victims identified Rodney in court. Those identifications were sufficient in and of themselves to establish probable cause to believe that Rodney committed the offenses involving those victims.
2) The admission of Darryl’s statement was not harmless as to Rodney on the attempted kidnapping of Ms. Smith (JU-87-000814.32) because without Darryl’s statement, there was no evidence implicating Rodney in that offense.
3) Darryl’s statement was not harmless as to Reginald on the charges involving Ms. Nix (JU-88-0608.11, robbery; JU-88-0608.15, attempted kidnapping) and Ms. Smith (JU-88-0608.10, attempted kidnapping) because neither of those victims identified Reginald and because Reginald’s own statement only connected him to the offenses against V.T. The transfer orders in those cases must be reversed because of the improper admission of Darryl’s statement.
4) Darryl’s statement was not harmless as to Montoya because without that statement there was nothing to connect Montoya with the offenses against Ms. Nix (JU-88-0373.05, robbery; JU-88-0373.11, attempted kidnapping) and Ms. Smith (JU-88-0373.06, attempted kidnaping). The transfer orders in those case must be reversed because of the improper admission of Darryl’s statement.
VI
Of the three appellants whose probable cause determinations we have, in part, affirmed, only Reginald argues that the juvenile Court’s decision to transfer him to circuit court for prosecution as an adult was erroneous.
In O.M. v. State, 595 So.2d 514, this Court adopted Justice Kennedy’s dissenting opinion in Ex parte J.R., 582 So.2d 444 (Ala.1991) (dissenting from the quashing of a writ of certiorari by the Alabama Supreme Court). That opinion interpreted § 12-15-34, 1975 Code of Alabama, to require “clear and convincing evidence” to support the transfer of a juvenile to circuit court for prosecution as an adult. Justice Kennedy’s opinion stated:
“[A]n appellate court must find, within the record, clear and convincing evidence in order to affirm a juvenile court’s determination at the disposition hearing that it is in the best interest of the child or the public to transfer the child for criminal prosecution.”
Ex parte J.R., 582 So.2d at 449. We must therefore determine whether the juvenile court’s decision to transfer Reginald to circuit court for prosecution as an adult was supported by such evidence.
Reginald’s birthdate is November 9, 1975. He was 14 years, 9½ months old on the date of the offenses, and one month away from his fifteenth birthday on the date of the transfer hearing. He is the youngest of the appellants. The others *537 were, at the time of the offenses, 16, 17, and 17 years of age. Reginald was slightly taller and slightly “more developed” than the average 14-year-old.
Reginald was adjudicated delinquent on a charge of “ungovernable behavior” by the Montgomery juvenile court in 1988, and was placed on probation. He violated the terms of his probation and was committed to the custody of the Department of Youth Services, where he remained for seven months. He was released on April 17, 1990, four months prior to the instant offenses.
Michael Washington, Reginald’s probation officer, stated that he believed that Reginald would be “a threat if ... allowed to remain the community,” but he gave his opinion that Reginald should be committed to the custody of the Department of Youth Services under the “Serious Juvenile Offender Statute”[3] rather than transferred for prosecution as an adult. He gave the following reasons for that recommendation:
“My recommendation is based on, under the Statute of the Serious Juvenile Offender, that he will be committed for at least one year and that they would give a review to determine whether or not he’s ready to come back to the community.... I understand the seriousness of the charges. I just feel like ... he needs to remain in the Juvenile System, because if he’s transferred to the Adult Court, I feel like he will become a hardened criminal at a very young age and that he will be a burden to society in one way or the other.... I agree that he should be punished. He should be taken out of the community_ [T]hat was one reason why I based [my opinion] to commit him for not less than one year, with the hopes or with the idea [of] a last chance effort that he may get his life together, or get his attitude together.”
Mr. Washington testified that Reginald admitted that he was a member of a “gang.” Reginald told Washington that “he felt like he had to be a part of [the gang]. That was his group. He placed a lot of importance on getting along and what the other members [were] doing.” When asked whether Reginald did things to obtain his gang members' approval, Washington replied, “To a certain extent, yes, because I think, at one time he said that he was scared that somebody may do something to him and that’s the reason why he did certain things.” On questioning by the prosecutor, Mr. Washington con *538 ceded that if Reginald were committed to the custody of the Department of Youth Services, he “could also make further contacts that [were] gang related” and could “recruit other members for his gang.”
Fred Vrgora, a juvenile probation officer who considered himself knowledgeable about youth gangs, testified that he had talked with known gang members assigned to him as probationers, and had reviewed written material confiscated from known gang members who were in detention. From those sources, he learned that Reginald was a member of the “Disciples” gang, with the rank of “Set King,” meaning that Reginald had directly or indirectly recruited at least 360 members for the gang. Vrgora testified that when Montgomery Police Corporal Shumway asked Reginald about his gang affiliation, Reginald admitted that he was a member of the Disciples, with the rank of “Chief Enforcer.” Mr. Vrgora also testified that he had learned that Reginald “controls detention” and had recruited at least two other individuals for the gang while he was in detention pursuant to the instant charges. Vrgora explained, “The reason why these individuals want more members, that’s where they get their status in their gang, their gang prestige. So even though [Reginald] is 14, he is hardcore and he is respected in [detention] as a high ranking Disciple.” Vrgora gave his opinion, based upon his knowledge of gang organization and upon Reginald’s rank within the gang, that for the crimes at issue here Reginald “was the leader and organized it and conceived it as the leader and g[ot] these other people motivated to commit these crimes.”
Even under the “clear and convincing” standard of review, we hold that the juvenile court’s order transferring Reginald is due to be affirmed.
“Clear and convincing evidence is most easily defined as the evidentiary standard that lies somewhere between a preponderance of evidence and evidence probative beyond a reasonable doubt. Addington v. Texas, 441 U.S. 418, 423-24, 99 S.Ct. 1804, 1807-08, 60 L.Ed.2d 323 (1979).” Matter of K.A., 484 A.2d 992, 995 (D.C.App.1984). See generally 9 J. Wigmore, Evidence § 2498 (Chadbourn rev. 1981); E. Cleary, McCormick on Evidence § 340 (3d ed. 1984); 32A C.J.S.Evidence § 1023 (1964). The standard has been explained as that evidence which convinces the trier of fact that a proposition is “highly probable,” as distinguished from “more probable than not.” McBaine, Burden of Proof: Degrees of Belief, 32 Calif.L.Rev. 242, 253-54 (1944).
“Clear and convincing proof is not necessarily undisputed proof.” Wambles v. Coppage, 333 So.2d 829, 835 (Ala.Civ.App.1976). “The clear ... and convincing standard is met when the court is ‘... clearly convinced of the affirmative of the proposition to be proved. This does not mean that there may not be contrary evidence.’ ” Matter of T.C.M., 651 S.W.2d 525, 535 (Mo.App.1983) (emphasis in original). “ ‘[Convincing’ evidence by definition requires a weighing of the evidence.” First Pennsylvania Bank, N.A. v. Lehr, 293 Pa.Super. 189, 201, 438 A.2d 600, 607 (1980).
In the present case, all of the evidence at the transfer hearing, with the exception of Michael Washington’s testimony, tended to support the conclusion that it was “in the best interest of [Reginald] or the public to grant the motion” to transfer. See Ala.Code 1975, § 12-15-34(b). At a juvenile transfer hearing, the clear and convincing standard can be met notwithstanding the fact that expert witnesses disagree. See Ward v. Commonwealth, 407 Mass. 434, 554 N.E.2d 25, 27 (1990) (appeal of juvenile transfer order under ch. 119, § 61 Mass.Gen.Laws Ann. (Supp.1989), which requires clear and convincing proof at dispositional phase of hearing).
In Ward, the Massachusetts court held that a transfer order was supported by clear and convincing evidence despite the fact that there was a conflict between the testimony of three defense experts and one court-appointed expert. It observed that the fact that “petitioner mustered a more voluminous record supporting his view does not compel the judge to find for the petitioner.” Ward, 407 Mass. at 439, 554 N.E.2d at 28. The appellate court held that *539 the trial court was entitled to resolve the conflict between experts by crediting the opinion of the expert it found most believable.
In the present case, the juvenile court judge was entitled to credit other evidence more strongly than the recommendation of Michael Washington, particularly since Washington’s reasons for his recommendation were not specific to Reginald, but could be said to apply to any juvenile offender (“he will become a hardened criminal at a very young age and ... he will be a burden to society in one way or the other”). Testimony regarding the seriousness of the offenses, the apparent inefficacy of Reginald’s past treatment efforts, and Reginald’s membership and ongoing recruitment efforts for'his “gang,” met the clear and convincing evidence standard to uphold this transfer order.
We believe the observation made fifteen years ago by the Court of Civil Appeals about the same trial judge also applies here: “The present case presented Judge Davis plentiful, albeit disputed, evidence” to support his decree. Wambles v. Coppage, 333 So.2d at 835.
Based on the above, it is the order of this Court that transfer orders of the juvenile court in the following cases are REVERSED AND REMANDED for new transfer hearings:
Darryl: JU-87-1374.12 (attempted kidnapping of Ms. Smith)
Reginald: JU-88-0608.10 (attempted kidnapping of Ms. Smith)
JU-88-0608.11 (robbery of Ms. Nix)
JU-88-0608.15 (attempted kidnapping of Ms. Nix)
Rodney: JU-87-0814.32 (attempted kidnapping of Ms. Smith)
Montoya: JU-88-0373.05 (robbery of Ms. Nix)
JU-88-0373.06 (attempted kidnapping of Ms. Smith)
JU-88-0373.07 (kidnapping of V.T.)
JU-88-0373.08 (robbery of V.T.)
JU-88-0373.09 (rape of V.T.)
JU-88-0373.11 (attempted kidnapping of Ms. Nix)
It is also the judgment of this Court that the transfer orders of the juvenile court in the following cases are AFFIRMED:
Darryl: JU-87-1374.13 (robbery of Ms. Nix)
JU-87-1374.14 (attempted kidnapping of Ms. Nix)
Reginald: JU-88-0608.12 (kidnapping of V.T.)
JU-88-0608.13 (robbery of V.T.) JU-88-0608.14 (rape of V.T.)
Rodney: JU-88-0814.31 (kidnapping of V.T.)
JU-88-0814.33 (robbery of Ms. Nix)
JU-88-0814.34 (robbery of V.T.)
JU-88-0814.35 (rape of V.T.)
JU-88-0814.36 (attempted kidnapping of Ms. Nix)
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
All Judges concur.

. Traditionally, the appellate courts of Alabama designate a juvenile appellant in a criminal case by initials rather than by using any part of the juvenile’s name. This same practice has been applied to victims of sex offenses. See Rule 52, Ala.R.App.P., which provides:
"In any case involving a juvenile who has been the subject of a proceeding in the juvenile court system, a person granted youthful offender status, a victim of child abuse, or a victim of a sex offense, the appellate court shall make reasonable efforts to preserve the anonymity of such a person. This anonymity shall be observed in the body of any opinion and in the styling of the case and upon the direction of the court shall be observed in motions and briefs.”
However, because this appeal involves four juvenile appellants and one victim of a sexual offense, the use of five sets of initials would be cumbersome and confusing. We will therefore use the given names “Darryl” for appellant D.D.P., "Montoya” for appellant M.M.A., “Reginald” for appellant R.R.G., and "Rodney” for appellant R.D.P.
We maintain the use of initials for V.T. Unlike Ms. Smith and Ms. Nix, V.T. was the victim of a sex offense.

. The legality of Rodney’s arrest is not challenged on appeal.

. Section 12-15-71.1, Ala.Code (Supp.1990), which became effective June 30, 1990, provides the following:
"(a) The juvenile court may find a child to be a serious juvenile offender if:
"(1) The child is adjudicated delinquent and the delinquent act or acts charged in the petition would constitute any of the following if committed by an adult:
"a. Class A felony;
“b. A felony resulting in serious physical injury [as defined in section 13A-l-2(8)];
"c. A felony involving physical force [section 13A-1-1(10) ], or a deadly weapon [section 13A-1-2(11) ], or a dangerous instrument [section 13A-1-2(12) ]; or “(2) The child has been adjudicated delinquent for an act which would constitute a Class A or B felony or burglary in the third degree involving a residence and the child has previously been adjudicated delinquent of two previous acts which would have been a Class A or B felony or burglary in the third degree involving a residence if such acts had been committed by an adult.
"(b) A child found to be a serious juvenile offender shall be committed to the custody of the Alabama department of youth services, where he shall remain for a minimum of one year.
"(c) A serious juvenile offender review panel shall be created by the board of the Alabama department of youth services. The serious juvenile offender review panel shall review quarterly the progress of each serious juvenile offender and determine at the end of the one year term served by each child, a further treatment plan for that child. The panel may extend the commitment, order alternative treatment or release the child. The serious juvenile offender review panel must provide the court with all reports and recommendations, and notify the judge in writing of the decision to release the child at least 30 days in advance of said release.
“(d) The Alabama department of youth services shall maintain and staff a separate, secure facility and implement programs for serious juvenile offenders. The minimum one year term required by this section shall be served at said facility and the review panel may extend the period of confinement in said facility as determined necessary.
"(e) Nothing in this section shall be construed to prevent the juvenile court from transferring a child for criminal prosecution pursuant to section 12-15-34.”