Following a jury trial, the defendant, Susan Brown, was found guilty of arson of a dwelling house and injury to a firefighter. On appeal, she argues that there was insufficient evidence to support her conviction of arson, that the trial judge improperly qualified one of the Commonwealth's witnesses as an expert, and that the prosecutor made improper remarks during closing argument. We affirm.
Background. We begin with a brief summary of the facts, reserving other relevant facts for the discussion of the issues.[2] Brown was temporarily staying at her friend, Nancy Fitch's, apartment in Lynn. The two had an agreement, memorialized in writing, that Brown would be able to stay in the apartment for no more than two weeks. When Brown overstayed her welcome, conflict arose, and Brown and Fitch began to fight, particularly over whether Brown was going to care for Fitch's pets in the event that Fitch went to jail.[3] In one incident, Fitch pushed Brown, resulting in Brown calling the police on Fitch.
On the day of the fire, Brown was home alone in the apartment. The neighbor heard a door slam around noontime, and saw that Fitch's animals were outside. At one point, Fitch returned home and retrieved her dog from the front yard but did not enter the apartment. About ten minutes after Fitch left, the neighbor saw smoke and left the building. Brown called 911 shortly after noon and reported that the couch was in "flames." Outside, Brown appeared "very calm."
According to an investigation of the fire, the couch was the most damaged part of the apartment and was the origin of the fire. Although both Brown and Fitch smoked cigarettes in the apartment, it was determined that the fire was intentionally set.
Analysis. 1. Sufficiency of the evidence. Brown first argues that the trial judge erred in denying her required finding of not guilty because there was insufficient evidence that she had any role in setting the fire. When reviewing a denial of a motion for a required finding of not guilty, we assess the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979). See Commonwealth v. Robicheau, 421 Mass. 176, 181 (1995).
In that light, we find sufficient evidence supporting the defendant's arson conviction. A finding of guilt of arson requires proof that the defendant wilfully and maliciously set fire to, burned, or caused to be burned, a dwelling house. See G. L. c. 266, § 1. "Of necessity, proof of arson must often rely on circumstantial evidence because arsonists are furtive criminals." Commonwealth v. Jacobson, 19 Mass. App. Ct. 666, 674 (1985). An inference drawn from circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable." Commonwealth v. Merola, 405 Mass. 529, 533 (1989), quoting Commonwealth v. Beckett, 373 Mass. 329, 341 (1977).
Here, the circumstantial evidence presented by the Commonwealth permitted the jury to draw the inferences necessary to support the verdict of guilt. This evidence included: Brown as the sole occupant of the apartment at the time of the fire; a 911 call of Brown's first-hand observation of the fire; Brown's and Fitch's hostility toward each other, with one incident resulting in Brown calling the police; voicemails from Brown on Fitch's telephone, claiming that Fitch's animals were getting taken away and that Fitch had a warrant out for her arrest; Brown's removal of the pets from the apartment minutes before the fire; Brown's "very calm" demeanor while standing outside during the fire; and her having a lighter in one of her hands after the fire.
Brown also made contradictory and false statements to the police and fire department about how the fire started. On scene, Brown made statements that contradicted one another, including whether she was asleep or awake when she realized that the couch was on fire and whether or not Fitch was inside the apartment prior to the fire starting. Brown also reported that she was not sure if there was a dog inside the apartment, yet also reported that Fitch came back to the apartment, grabbed her dog, and left with the dog.
At Brown's interview at the Lynn fire department, her story changed again and she claimed that she was outside when the fire started, even though she told officers on scene that she was inside. In this interview, Brown was also adamant that she did not call 911 and that she was not drinking the day of the fire.[4] Both of these statements were contradicted by Brown's earlier on scene statements that she did call 911, and officers' observations that she smelled of alcohol. In fact, the jury heard Brown's 911 call reporting the fire during trial. Finally, Brown's statements that she was not mad at Fitch and that there was no paper stating that she must leave the apartment after two weeks, was also contradicted with evidence presented at trial. Accordingly, Brown's contradictory statements "could be found to be false." Commonwealth v. Graham, 62 Mass. App. Ct. 642, 646 (2004). Indeed, "[f]alse statements to police may be considered as consciousness of guilt if there is other evidence tending to prove the falsity of the statements." Commonwealth v. Robles, 423 Mass. 62, 71 (1996). See Commonwealth v. Sanchez, 476 Mass. 725, 731 (2017).
Lastly, expert testimony established that the fire was intentionally started, and ruled out other possible causes. Although Brown argues that the defense expert witness offered different causes for the fire and questioned the Commonwealth's investigation, this "is an attack upon the weight, not the sufficiency of the evidence. Its resolution rests with the fact finder." Commonwealth v. Husband, 82 Mass. App. Ct. 1, 6 (2012). See Ward v. Commonwealth, 407 Mass. 434, 438 (1990) (where testimony from various experts is conflicting, it is for trier of fact to determine which expert's testimony to accept, if any). Moreover, the evidence presented through the defense expert witness "did not result in a deterioration of the Commonwealth's case." Commonwealth v. Cartwright, 447 Mass. 1015, 1016 (2006). See Commonwealth v. Lugo, 63 Mass. App. Ct. 204, 207 (2005) (sufficient evidence to find defendant guilty of arson where "there was ample evidence presented of motive, exclusive opportunity, and of a fire intentionally set"). Thus, the trial judge did not err in denying Brown's required finding of not guilty.
2. Trooper Peledge's expert testimony. Next, Brown argues that Trooper Peledge lacks the education and training to qualify as an expert.[5] We disagree.
A judge has "broad discretion with respect to the admissibility of expert testimony," Commonwealth v. Morris, 82 Mass. App. Ct. 427, 431 (2012), quoting Commonwealth v. Mamay, 407 Mass. 412, 421 (1990), and the "decision to admit expert testimony is subject to review only for abuse of discretion." Commonwealth v. Roderiques, 462 Mass. 415, 428 (2012). " 'The crucial issue,' in determining whether a witness is qualified to give an expert opinion, 'is whether the witness has sufficient "education, training, experience and familiarity" with the subject matter of the testimony.' " Commonwealth v. Richardson, 423 Mass. 180, 183 (1996), quoting McLaughlin v. Selectmen of Amherst, 422 Mass. 359, 361-362 (1996).
At the time of trial, Trooper Peledge was a member of the State police in the fire and explosion investigation unit for over eight years, as well as a certified fire investigator and international association of arson fire investigator technician. He undergoes yearly and monthly trainings, has his bachelor's degree in criminal justice, and was enrolled in a master's program for criminal justice at the time of trial. Trooper Peledge has been the lead investigator on about 350 fire investigations, responding to a fire on an average of one to two times per week. Based on this training and experience, Trooper Peledge had sufficient familiarity with the subject testimony, and he properly testified as to his opinion on the cause of the fire. See Puopolo v. Honda Motor Co., 41 Mass. App. Ct. 96, 98 (1996), quoting Simon v. Solomon, 385 Mass. 91, 105 (1982) ("An expert witness may give testimony 'on matters within the witness's field of expertise [and this testimony] is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide' ").
Brown's remaining argument criticizing Trooper Peledge's investigation technique and conclusions, in light of the defense expert's testimony, simply goes to the weight of such testimony, which was for the jury to consider. See Commonwealth v. Cowen, 452 Mass. 757, 762 (2008) ("The matter of how much weight is to be given a witness, particularly an expert witness, is a matter for the trier of fact, not an appellate court"). Therefore, we discern no abuse of discretion in the judge's qualification of Trooper Peledge as an expert witness.
3. Prosecutor's closing argument. Brown maintains that the prosecutor misstated the testimony of the defense expert witness, and improperly commented on the fact that he was paid to testify during her closing argument. Because there was no objection at trial, "[w]e review these claims for error, and if there was error, for a substantial risk of a miscarriage of justice." Commonwealth v. Rivera, 91 Mass. App. Ct. 796, 801 (2017).
Although "prosecutor[s] may not misstate evidence or refer to facts not in evidence in a closing argument," Commonwealth v. Goddard, 476 Mass. 443, 449 (2017), they are entitled "to marshal the evidence and suggest inferences that the jury may draw from it." Commonwealth v. Drayton, 386 Mass. 39, 52 (1982). Here, the prosecutor properly summarized the defense expert's testimony to the jury and argued that this could not have been a case involving a "smoking fire." Although Brown argues that the defense expert did not mention fumes, gas, or smoke during his testimony, he did state on cross-examination, that in most cases, cigarette fires do not produce enough heat to get materials to catch fire immediately and that instead, a cigarette will smolder, or "smoke" when it gets buried in combustible material. Accordingly, the prosecutor did not misstate the defense expert's testimony and properly argued that the fire was not a "smoking fire."
Brown also takes issue with the prosecutor's comment that the defense expert witness would conduct a fire examination "pretty much exactly the way Trooper Peledge did." Based on the two expert's testimony on how they conduct investigations, we conclude that this was not a misstatement of the evidence.
Finally, Brown takes issue with the prosecutor's comment that the defense expert witness was "paid to testify to what the defense wants to hear." "The fact that [a witness] was retained by the defense was an appropriate subject of argument to the jury." Commonwealth v. O'Brien, 377 Mass. 772, 778 (1979). Contrary to Brown's argument, the prosecutor's closing argument here was not "as potentially destructive as the condemnation leveled at the defense psychiatrists in Commonwealth v. Shelley, 374 Mass. 466, 470 (1978)." Commonwealth v. Cosme, 410 Mass. 746, 754 (1991). See Commonwealth v. Moore, 408 Mass. 117, 133 (1990).
In any event, even if the prosecutor's argument went too far, we are confident that it did not have an impact on the verdict. Closing argument is argument, not evidence, and jurors are presumed to be capable of discounting excessive claims. Moreover, the judge in this case directly instructed the jurors not to credit statements made by counsel if such statements did not coincide with the jurors' recollection of the evidence, and that closing arguments are not evidence. See Commonwealth v. Kozec, 399 Mass. 514, 517 (1987).
Judgments affirmed.

We recite these facts in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979).

Fitch was on probation and facing possible jail time. Fitch had one dog, one cat, and two birds that lived in the apartment.

In this interview, Brown also asked, unprovoked, "why would I want to burn my own stuff?"

Brown also mentions in a single sentence that she also objected to this testimony on the grounds that Trooper Peledge's status as the lead investigator precluded his testifying as an expert. Where Brown does not offer any argument regarding this objection, we need not consider it on appeal. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).