COMMONWEALTH *vs.* CHRISTOPHER BERRY.

Essex. December 6, 1994. - April 14, 1995.

Present: WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Delinquent Child. Jurisdiction,* Delinquent child, Transfer hearing. *Practice, Criminal,* Transfer hearing, Juvenile delinquency proceeding, Findings by judge, Instructions to jury, Verdict, Duplicative convictions, Sentence, Capital case. *Search and Seizure,* Consent, Expectation of privacy. *Constitutional Law,* Search and seizure. *Evidence,* Photograph, Judicial discretion. *Felony-Murder Rule. Homicide. Due Process of Law,* Elements of criminal offense. *Burglary. Intoxication.*

Statement of the standards for transfer of a juvenile pursuant to G. L. c. 119, § 61, for trial as an adult. [99-101]

Evidence presented at a juvenile transfer hearing under G. L. c. 119, § 61, supported the District Court judge's subsidiary findings and his conclusions that the juvenile presented a significant danger to the public and that he was not amenable to rehabilitation as a juvenile. [101-103]

At a criminal trial the judge correctly denied the defendant's motion to suppress a package of cigarettes and some matches that the defendant had voluntarily left for some hours on a counter at a police station, with regard to which the defendant had neither manifested an expectation of privacy nor demonstrated a reasonable expectation of privacy, as would implicate the protections of art. 14 of the Massachusetts Declaration of Rights or the Fourth Amendment to the United States Constitution. [103-107]

The judge at a murder trial did not abuse his discretion in admitting in evidence a photograph of the victim which was relevant to whether the murder was committed with extreme atrocity or cruelty or with premeditation and deliberation [107-109]; nor did he abuse his discretion in admitting in evidence the nightgown the victim had been wearing or in allowing the display of the victim's bedclothes to the jury [109].

At a murder trial, the judge properly submitted the case to the jury on the theory of felony-murder, with burglary as the underlying felony. [109]

In the circumstances of a murder trial in which the jury found the defendant guilty of burglary with actual assault (a stabbing) and of first degree murder of the victim of the assault, the jury must therefore unanimously have found the elements necessary for a finding of guilty of felony-murder in the first degree: thus, there was no reversible error in

the judge's refusal to instruct the jury that they must agree unanimously on one or more theories of culpability before finding the defendant guilty of murder in the first degree. [109-112]

This court stated that, hereafter, when requested, a judge should give an instruction to the jury that they must agree unanimously on the theory of culpability where the defendant has been charged with murder in the first degree. [112]

At a murder trial, no substantial risk of a miscarriage of justice was created by the judge's correct instructions to the jury on the issue of the effects of the defendant's consumption of drugs and alcohol on his mental state at the time of the killing. [113]

In a criminal case in which the jury agreed unanimously that the defendant was guilty of murder in the first degree on a theory of felony-murder and also found the defendant guilty of the underlying felony, burglary, the burglary conviction was duplicative, requiring that conviction and sentence to be vacated. [113-114]

No reason appeared for this court to exercise its authority under G. L. c. 278, § 33A, to grant a new trial in a murder case or to reduce the verdict of murder in the first degree. [114]


INDICTMENTS found and returned in the Superior Court Department on December 21, 1988, following a transfer hearing in the juvenile session of the Lynn Division of the District Court Department before *Domenic J.F. Russo*, J.

The cases were tried before *Richard G. Stearns*, J.

*Elizabeth A. Lunt* for the defendant.

*Robert J. Bender*, Assistant District Attorney (*Gerald P. Shea*, Assistant District Attorney, with him) for the Commonwealth.

*Kenneth J. Fishman*, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

NOLAN, J. A jury convicted the defendant of murder in the first degree and burglary with actual assault, for which he received concurrent life sentences.[1] On appeal, the defendant

---

[1]The murder indictment stated that the defendant "being armed with a dangerous weapon, did assault and beat [the victim] with intent to murder her and by such assault and beating did kill and murder [the victim]." The burglary indictment stated that the defendant "did break and enter the dwelling house of [the victim] in the nighttime with intent to commit a felony . . . and did make an actual assault on said [victim]."

challenges (1) the denial of his motion to dismiss, on the ground that the evidence did not support the District Court's transfer order; (2) the denial of his motion to suppress cigarettes and matches as evidence; (3) the admission of certain allegedly inflammatory evidence; (4) the submission of the case to the jury on the theory of felony-murder; (5) the trial judge's refusal to instruct the jury that they must agree unanimously on the theory of culpability in order to convict the defendant of murder in the first degree; (6) the judge's instructions to the jury regarding the effects of the consumption of alcohol and other drugs on the defendant's mental state. The defendant also claims that we should exercise our power under G. L. c. 278, § 33E (1992 ed.), to reduce the murder verdict to a lesser degree of guilt or to order a new trial. We vacate both the conviction and the sentence on the conviction of burglary with actual assault. We affirm, however, the murder conviction and conclude that there is no reason to exercise our power under G. L. c. 278, § 33E.

The jury could have found the following facts. On December 26, 1987, the defendant hosted a small gathering of his friends at the Saugus apartment that he shared with his father and sister. The defendant's father had gone out for the evening. Along with several of his friends, the defendant was drinking beer. In addition, the defendant was smoking marihuana and was ingesting both Xanax and mescaline. The party lasted for several hours until approximately 11 P.M. when the defendant and his friends left the apartment. Soon thereafter, the defendant's father returned to the apartment. When the defendant returned alone at midnight, he proceeded to argue with his father regarding the defendant's

---

General Laws c. 266, § 14 (1992 ed.), provides, in pertinent part, as follows: "Whoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years."

drug and alcohol abuse. The argument escalated into a phys-
ical altercation and the defendant's father ordered him to
leave. The defendant, however, refused. Eventually, the de-
fendant's father physically removed him from the apartment.

The defendant then walked across the street from his own
apartment to the victim's home. The victim was an eighty-
seven year old widow who lived alone. The defendant had the
intention of breaking into the victim's home in order to steal
some items and money. The defendant gained entry into the
victim's home by breaking a window at the rear of the house.
The defendant first went into the kitchen where he ate a
piece of pie, drank some vodka, and ripped a telephone from
the wall. The defendant also smoked several filtered Camel
brand cigarettes, discarding the cigarette butts and matches
on the floor. He then climbed the stairs to the second floor
and entered the victim's bedroom. Seeing the victim lying in
her bed, he began to stab her with a butcher knife. The de-
fendant stabbed the victim eight times in her head, chest,
abdomen, upper arms, and hands. During the course of the
attack, the defendant perforated the victim's bedspread,
blanket, top sheet, and nightgown. After he had finished
stabbing the victim, the defendant smoked another cigarette
and extinguished it on the victim's forehead.

The defendant then gathered several items from the vic-
tim's home. Among other things, the defendant stole a small
television set, a pair of binoculars, an alarm clock, and two
bottles of prescription drugs. The defendant secreted these
items to a wooded area across the street from the victim's
house. The defendant then returned home.

When he arrived at his apartment at approximately 2 A.M.
on December 27, the defendant and his father resumed argu-
ing. The defendant's father summoned the Saugus police de-
partment and requested that they take his son into protective
custody. After several minutes' discussion between several
Saugus police officers and the defendant's father, the defend-
ant voluntarily agreed to spend the night at the police sta-
tion. At the time the defendant arrived at the police station,
the police officers were unaware that the victim had been

killed and that the defendant had killed her. Later that morning, however, the victim's son-in-law alerted the police that the victim had been killed. Based on information that they had gathered both at the crime scene and at the police station, the police arrested the defendant on a juvenile complaint at the Saugus police station early on the afternoon of December 27.

Subsequently, in 1988, a judge of the juvenile session of the Lynn Division of the District Court Department conducted a transfer hearing pursuant to G. L. c. 119, § 61 (1988 ed.). After the hearing, the judge dismissed the juvenile complaint. Criminal complaints were issued against the defendant charging: (1) murder, and (2) breaking and entering with the intent to commit a felony. An Essex County grand jury subsequently indicted the defendant for murder in the first degree and actual assault committed in the course of burglary. A judge in the Superior Court denied the defendant's motion to dismiss based on alleged errors in the transfer hearing.[2] The defendant then filed a motion to suppress physical evidence. A judge in the Superior Court denied that motion without a hearing. The defendant then filed a motion to reconsider. Before the jury were sworn, the trial judge conducted an evidentiary hearing and denied the motion. A jury convicted the defendant on both the murder charge and the burglarious assault charge.

1. *Propriety of the transfer.* The defendant argues that the evidence presented at the transfer hearing did not support the District Court judge's conclusion that the defendant presented a significant danger to the public and was not amenable to rehabilitation as a juvenile. The defendant claims that transfer of his case was improper under the standards of G. L. c. 119, § 61, and our case law. There was no error.

General Laws c. 119, § 61, sets forth the requirements governing a transfer hearing. At the hearing, the judge must

---

[2]The defendant then filed a motion to suppress a statement that he had made to the police. A judge in the Superior Court granted the defendant's motion. On the Commonwealth's application for interlocutory appeal, we reversed. *Commonwealth* v. *Berry*, 410 Mass. 31 (1991).

determine that probable cause exists to believe that the child
has committed the offense before addressing the transfer is-
sue. G. L. c. 119, § 61. The judge then must enter written
findings, based on clear and convincing evidence, that: (1)
"the child presents a significant danger to the public as
demonstrated by the nature of the offense charged and the
child's past record of delinquent behavior, if any" and that
(2) the child "is not amenable to rehabilitation as a juve-
nile."[3] G. L. c. 119, § 61. See *Ward* v. *Commonwealth*, 407
Mass. 434, 437 (1990). "The judge must consider, but shall
not be limited to, evidence of the following factors: '(a) the
seriousness of the alleged offense; (b) the child's family,
school and social history, including his court and juvenile de-
linquency record, if any; (c) adequate protection of the pub-
lic; (d) the nature of any past treatment efforts for the child;
and (e) the likelihood of rehabilitation of the child.' " *Id.*

"We have stated that '[a] judge who makes the two writ-
ten findings required by G. L. c. 119, § 61, must also make
subsidiary findings indicating the basis for his conclusions
concerning the two statutorily required findings. *A Juvenile*
v. *Commonwealth*, 370 Mass. 272, 282 (1976). These subsid-
iary findings may show consideration of the five enumerated
statutory factors and the factors identified in our guidelines,
*id.* at 282 n.14, although any single factor will rarely, if ever,

---

[3]Since 1988, the Legislature has amended this section, lowering the
Commonwealth's burden of proof for transfer in cases in which a juvenile
is charged with murder or another crime involving violence to a person. St.
1990, c. 267, § 3. St. 1991, c. 448, § 6. In a transfer case in which the
juvenile is charged with murder, the Commonwealth's burden of proof is
by a preponderance of the evidence as distinguished from clear and con-
vincing evidence which applies in other cases. See *Commonwealth* v. *Clif-
ford C.*, 415 Mass. 38, 42 (1993). In addition, as amended, "[§] 61 also
creates a rebuttable presumption that a juvenile charged with murder (or
with another enumerated violent crime) is dangerous to the public and not
amenable to rehabilitation." *Commonwealth* v. *Clifford C.*, *supra*, citing
*Commonwealth* v. *Wayne W.*, 415 Mass. 218, 222-225 (1993). Thus, the
Legislature has manifested an intent to facilitate transfer in cases where a
juvenile is charged with murder or another crime involving violence to a
person. *Commonwealth* v. *Clifford C.*, *supra*. In the present case, however,
we apply § 61 as it read in 1988, when the judge conducted the transfer
hearing.

be controlling.[4] Cf. *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 282 (1976).' " *Ward* v. *Commonwealth*, *supra*, quoting *Two Juveniles* v. *Commonwealth*, 381 Mass. 736, 741 (1980). The judge, however, does not have to make written findings regarding each factor. *Ward* v. *Commonwealth*, *supra* at 437-438, citing *Two Juveniles* v. *Commonwealth*, *supra*. Instead, we have concluded that "a judge has considerable discretion, within this statutory framework, to determine whether a child should be treated as an adult." *Commonwealth* v. *Matthews*, 406 Mass. 380, 383 (1990), quoting *A Juvenile* v. *Commonwealth*, 370 Mass. at 282. Despite this discretion, however, a "[s]erious deficiency in the [judge's] subsidiary findings . . . count[s] as a faulty step in the process of transfer . . . ." *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 558 (1980).

In the present case, the judge made extensive findings of fact following a hearing. In addition, the judge thoroughly considered each statutory factor listed in G. L. c. 119, § 61. Finally, each of the judge's findings and conclusions has a basis in the record. We conclude, therefore, that the judge adhered to the guidelines set forth in our cases and satisfied the statutory requirements necessary for a transfer. The defendant argues, however, that there were serious deficiencies in the judge's subsidiary findings which constituted a faulty step in the process of transfer. See *id.*

A. *The defendant's behavioral history.* The defendant claims that the evidence did not support the judge's finding that he had an aggressive, antisocial, and delinquent behavioral history. We disagree. One psychiatrist testified that the defendant had exhibited "a relatively [ingrained] pattern of behavior" and that he had "chronic behavior pattern" with "poor social functioning"; and "truancy, substance abuse and

---

[4]We have stated that "[t]here is no specific requirement that a judge weigh these factors in a certain manner or achieve some predesigned balance. Any factor which bears on the protection of the public and the amenability of the child to treatment as a juvenile may be considered." *Ward* v. *Commonwealth*, *supra* at 438, quoting *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 282 (1976).

anti-social behavior." A clinical psychologist concluded that the defendant was "chronically angry." In addition, he testified that the defendant had a character disorder "of the passive aggressive type" and that persons suffering from a passive aggressive disorder "get in trouble" for behavior that is "always aggressive[ly] violent." Furthermore, the defendant had been suspended from school on several occasions for various infractions involving violence, drug use, and antisocial behavior.[5]

B. *The defendant's treatment history.* The defendant argues that the evidence did not support the judge's findings that "all past treatment and rehabilitation have been a failure." We disagree. In late 1985 and early 1986, the defendant had been hospitalized with a diagnosis of conduct disorder, drug abuse, and attention deficit disorder. In addition, the defendant had transferred to an alternative education school in 1986 because of his poor performance in the Saugus public school system.[6] Furthermore, the defendant had been enrolled in a drug rehabilitation program for youthful drug and alcohol abusers in the spring of 1987.[7] Nevertheless, the defendant reverted to his former behavior in each instance.[8]

---

[5]Witnesses testified that the defendant had been suspended from school for fighting with another student during lunch break and that the defendant had instigated a physical altercation by "pushing and shoving the other student." In addition, the defendant had been suspended on several occasions for arriving at school under the influence of narcotics. The defendant also had been suspended from school for shoplifting while on a school field trip.

[6]The defendant had transferred to the North Shore Community School in Danvers, which is a school for "behaviorally disoriented students."

[7]In the spring of 1987, the defendant was a resident at ARC The Terraces in Pennsylvania for seven weeks. The defendant received extensive drug and alcohol counselling.

[8]Counsel for the defendant claims that the defendant's behavior improved markedly while he was in the custody of the Department of Youth Services, indicating that the defendant was amenable to rehabilitation. The judge, however, was entitled to discount the defendant's favorable conduct in the secured facility of the Department of Youth Services and rely more heavily on the evidence of the defendant's past antisocial behav-

C. *Potential for rehabilitation.* The defendant claims that the judge erred in making the subsidiary finding that the defendant could not "be rehabilitated within the present juvenile treatment structure." We disagree. "We do not 'revise a judge's subsidiary findings of fact, where they are warranted by the evidence, or . . . review the weight of the evidence related to the findings. In particular, it is inappropriate to ask us to reverse a judge's findings involving credibility, since he saw the witnesses and we did not.' " *Commonwealth* v. *Day*, 387 Mass. 915, 919 (1983), quoting *Commonwealth* v. *Murphy*, 362 Mass. 542, 550-551 (1972) (Hennessey, J., concurring). See *Commonwealth* v. *Matthews*, *supra* at 386. Although some witnesses testified that the defendant was amenable to rehabilitation, a court-appointed expert witness concluded that it was "extremely unlikely" that the defendant could be rehabilitated as a juvenile. The judge, therefore, was entitled to resolve the conflicting testimony in favor of the court-appointed expert witness. See *Ward* v. *Commonwealth*, *supra* at 438, citing *Commonwealth* v. *Matthews*, *supra*.

Counsel for the defendant also complains that the judge could have granted the defendant an extension on his commitment to a secure juvenile facility beyond his eighteenth birthday. Nevertheless, "[t]he transfer statute only requires the judge 'to focus on the minor's potential for successful treatment *before* the age of majority within existing juvenile facilities.' *A Juvenile*, [370 Mass.] at 283 (emphasis supplied). See *Two Juveniles*, *supra* at 742; *Commonwealth* v. *Hill*, 387 Mass. 619, 622 (1982)." *Commonwealth* v. *Matthews*, *supra* at 387. We are satisfied that there was sufficient evidence in the record to support the judge's conclusion that treatment would be necessary beyond the defendant's eighteenth birthday.

2. *Suppression of the cigarettes and the matches.* The defendant argues next that the motion judge erred in denying

---

ior, drug abuse, and antipathy toward school. *Ward* v. *Commonwealth*, *supra* at 439.

the defendant's motion to suppress as evidence the cigarettes and the matches that were found at the police station. At the outset, we note that we accept the judge's subsidiary findings in the absence of clear error. *Commonwealth* v. *Frazier*, 410 Mass. 235, 239 (1991). *Commonwealth* v. *MacNeill*, 399 Mass. 71, 76 (1987), citing *Commonwealth* v. *Corriveau*, 396 Mass. 319, 326 (1985). In addition, we give substantial deference to the judge's ultimate findings. *Commonwealth* v. *MacNeill, supra.* Nevertheless, we make our own determination regarding the correctness of the judge's application of law to his own findings. *Commonwealth* v. *Corriveau, supra* at 326, quoting *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), *S.C.*, 398 Mass. 806 (1986). After carefully reviewing the judge's findings and the record in the present case, we conclude that the evidence supports the judge's findings, that there is no cause to reject the judge's ultimate findings, and that the judge's rulings were correct.

In support of his motion to suppress the cigarettes and the matches as evidence, the defendant claims first that the police officer "searched" the defendant and "seized" the items from his person in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. We disagree.

If a person surrenders an item voluntarily, "a 'search' or 'seizure' within the purview of the Fourth Amendment . . . is not involved." *Commonwealth* v. *Aguiar*, 370 Mass. 490, 496 (1976), citing *Coolidge* v. *New Hampshire*, 403 U.S. 443, 484-490 (1971). The voluntariness of consent "is a question of fact to be determined in the circumstances of each case, with the burden of proof on the government." *Commonwealth* v. *Aguiar, supra*, citing *Commonwealth* v. *Mendes*, 361 Mass. 507, 512-513 (1972). "Even if a search and seizure is involved here, consent vitiating the need for a search warrant may be found in cooperative conduct." *Commonwealth* v. *Aguiar, supra*, citing *Commonwealth* v. *Causey*, 356 Mass. 125, 130 (1969).

The motion judge determined that the defendant had submitted himself voluntarily to the police. In addition, the mo-

tion judge determined that the defendant had agreed implicitly to abide by the rules and regulations of the Saugus police department, in exchange for shelter. Thus, it is clear that the motion judge decided that no "search" or "seizure" had taken place in the constitutional sense because the defendant had surrendered the matches and the cigarettes voluntarily. See *Commonwealth* v. *Aguiar, supra.* We are satisfied not only that the evidence supports the judge's findings, but also that the motion judge's rulings were correct. See *Commonwealth* v. *MacNeill, supra* at 76; *Commonwealth* v. *Corriveau, supra* at 326.

In support of his motion to suppress the cigarettes and the matches as evidence, the defendant claims next that the police officers had conducted an illegal search of the cigarette package and the matches that had been left on a counter in the police station. We disagree.

The defendant was not entitled to the suppression of the items, despite the lack of a warrant, unless he could demonstrate that the police officers had conducted a "search" of the cigarettes and the matches in the constitutional sense. See *Commonwealth* v. *Pina,* 406 Mass. 540, 544 (1990). See also *Commonwealth* v. *Frazier, supra* at 244 n.3. The determination whether the government's conduct constituted a search turns on whether "the activity intruded on the defendant's reasonable expectation of privacy." *Commonwealth* v. *Pina, supra,* citing *Rawlings* v. *Kentucky,* 448 U.S. 98, 104-106 (1980). See *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 742 (1981). "The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." *Commonwealth* v. *Montanez,* 410 Mass. 290, 301 (1991), citing *California* v. *Ciraolo,* 476 U.S. 207, 211 (1986). The defendant has the burden of establishing both elements. *Commonwealth* v. *Montanez, supra,* citing *Commonwealth* v. *Mamacos,* 409 Mass. 635, 638 (1991). If the defendant satisfies his burden, then the government has the burden to show that its search was rea-

sonable and, therefore, lawful. *Commonwealth* v. *Pina, supra*
at 544, citing *Commonwealth* v. *Antobenedetto*, 366 Mass.
51, 57 (1974). Finally, we recognize that, "[i]n examining
the expectation of privacy question under art. 14, we do not
necessarily reach the same result as under Fourth Amend-
ment analysis." *Commonwealth* v. *Montanez, supra* at 301,
citing *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 (1989).

In the present case, the defendant failed to establish that
he had manifested a subjective expectation of privacy in the
cigarettes and the matches.[9] Counsel for the defendant failed
to elicit any testimony at the suppression hearing that the

---

[9]Even if we were to decide that the defendant had manifested a subjec-
tive expectation of privacy, which we do not, we conclude that such an
expectation would not have been reasonable in the circumstances. We con-
sider several factors when analyzing the reasonableness of an individual's
expectation of privacy. *Commonwealth* v. *Montanez*, 410 Mass. 290, 301-
302 (1991). *Commonwealth* v. *Pina*, 406 Mass. 540, 545 (1990). These
factors include: (1) the character of the place where the government activ-
ity occurs, *id.*, citing *Commonwealth* v. *Blinn*, 399 Mass. 126, 128, appeal
dismissed, 482 U.S. 921 (1987); (2) whether the defendant owned the
place involved, *Rawlings* v. *Kentucky*, 448 U.S. 98, 104 (1980); *Common-
wealth* v. *Mora*, 402 Mass. 262, 265 (1988); (3) controlled access to it,
*Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 742 (1981); (4)
whether the defendant had a possessory interest in the item taken or in-
spected, *Commonwealth* v. *Pina, supra*, citing *United States* v. *Lisk*, 522
F.2d 228, 230-231 (7th Cir. 1975), cert. denied, 423 U.S. 1078 (1976),
after remand, 559 F.2d 1108 (7th Cir. 1977); (5) whether the defendant
has taken normal precautions to protect his privacy. *Commonwealth* v.
*D'Onofrio*, 396 Mass. 711, 714-715 (1986). In addition, "[w]e have stated
that 'an individual can have only a very limited expectation of privacy with
respect to an area used routinely by others.'" *Commonwealth* v.
*Montanez, supra* at 302, quoting *Sullivan* v. *District Court of Hampshire,
supra* at 742.

Having taken the listed factors into account, we conclude that the evi-
dence at the suppression hearing, viewed as favorably as possible for the
defendant, indicates that any expectation of privacy that the he may have
had in the matches and the cigarette package was unreasonable. The de-
fendant had remained at the police station into the late morning despite
the fact that he had been free to leave at any time. In addition, the defend-
ant had allowed the cigarettes and matches to remain on a counter in a
public area of the police station. Society, therefore, would not recognize
the defendant's privacy interest in the items as objectively reasonable. As a
result, the defendant did not sustain his burden of proof as a matter of
law.

defendant had attempted to exercise dominion or control over the items. It is clear from the testimony at the suppression hearing that the defendant agreed to abide by the police policy banning smoking in the juvenile room. It is also apparent that the defendant agreed with the police officer's decision to place the cigarettes and the matches on a counter outside of the juvenile holding area in the police station. Furthermore, there was no evidence that the defendant had smoked even one cigarette at the station. Instead, the defendant had left the cigarettes and the matches on the counter outside the juvenile holding area from the time that he had entered the station at approximately 2 A.M. until the early afternoon the same day. If the defendant had been concerned about manifesting an ownership interest in the cigarettes and the matches, he could have left the station.

We agree, therefore, with the motion judge's finding that the defendant failed to establish that he had manifested a subjective expectation of privacy in the cigarettes and the matches and that he failed to demonstrate a reasonable expectation of privacy in the items.[10] We also agree with the motion judge's conclusion that the police officers did not conduct a "search" of the cigarettes and the matches that would implicate art. 14 or the Fourth Amendment. Accordingly, we find no error in the judge's decision to deny the defendant's motion to reconsider his motion to suppress the cigarettes and the matches as evidence.

3. *Photographs of the victim and display of victim's bedclothing.* The defendant argues next that the judge erred not only by admitting in evidence the victim's bloodstained nightgown and one photograph of the victim's naked body,

---

[10]The motion judge concluded that "the defendant has failed to meet his burden of demonstrating that he had any reasonable expectation of privacy, either subjective or objective, in the cigarettes and matches which had been left on the counter at the station." As a result, the motion judge concluded that "the defendant has failed to meet the burden established under both the Fourth Amendment and Massachusetts law, which requires a defendant to first meet the threshold question of whether a search, in the Article XIV or Fourth Amendment sense, has occurred at all."

but also by allowing a witness to display the bloodstained bedclothing taken from the victim's bed. The defendant claims that these items were not relevant to the Commonwealth's case-in-chief and, therefore, the judge should have excluded the items because they were highly inflammatory. There was no error.

A. *Admissibility of the photograph.* "The admissibility of photographic evidence is left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion." *Commonwealth* v. *Gallagher*, 408 Mass. 510, 519 (1990). *Commonwealth* v. *Waters*, 399 Mass. 708, 715 (1987). "[I]f the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome or may have an inflammatory effect on the jury.' " *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990), quoting *Commonwealth* v. *Bys*, 370 Mass. 350, 358 (1976). Furthermore, it is well settled that where a defendant "is accused of committing murder with extreme atrocity or cruelty and with premeditation and deliberation, that photographs indicating the force applied and portraying the injuries inflicted may properly be admitted on the issue of whether the murder was committed with extreme atrocity or cruelty, as well as on the issue of premeditation and deliberation." *Commonwealth* v. *Ramos*, *supra* at 406-407. See *Commonwealth* v. *Sielicki*, 391 Mass. 377, 382 (1984). We have examined the disputed photograph. It was relevant to whether the murder was committed with extreme atrocity or cruelty or with premeditation and deliberation.[11] See *Commonwealth* v. *Ramos*, *supra* at 406-

[11]The defendant claims also that the photographs were not relevant because the medical examiner already had testified concerning the extent of the victim's wounds. We have stated, however, that "[i]t is not a valid objection to admissibility that the medical examiner had already testified in detail as to the wound and other conditions shown by the photographs." *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990). In the present case, the photographs possessed probative value regarding whether the defendant had acted with extreme atrocity or cruelty or with premeditation and deliberation.

407; *Commonwealth* v. *Repoza*, 382 Mass. 119, 128 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987). The judge, therefore, did not abuse his discretion in admitting the photograph in evidence. See *Commonwealth* v. *Zagranski*, 408 Mass. 278, 289 (1990) (photograph admitted in evidence "not so gruesome" or inflammatory to indicate that judge abused discretion).

B. *Admission of nightgown and display of bedclothing.* In *Commonwealth* v. *Zagranski, supra*, we decided that a trial judge did not abuse his discretion in admitting in evidence the victim's bloodstained clothing where the clothing was only marginally relevant. In the present case, the Commonwealth displayed the victim's bedclothing and introduced in evidence the victim's nightgown to show that each item had a single knife cut in a blood-stained area. We think that the items were relevant to the issue whether the murder was committed with extreme atrocity or cruelty or with deliberate premeditation. See *Commonwealth* v. *Ramos, supra* at 406-407; *Commonwealth* v. *Repoza, supra* at 128. We conclude, therefore, that the judge did not abuse his discretion by admitting the nightgown in evidence or by permitting the Commonwealth to display the bedclothing. In the future, however, trial judges must take care to avoid exposing the jury unnecessarily to inflammatory material that might inflame the jurors' emotions and possibly deprive the defendant of an impartial jury.

4. *Propriety of submitting case to jury on theory of felony-murder.* In light of our holding in *Commonwealth* v. *Claudio*, 418 Mass. 103, 105-109 (1994), that burglary with actual assault in violation of G. L. c. 266, § 14 (1992 ed.), may serve as the felony for a felony-murder conviction, the defendant fails in his argument that the judge erred in submitting the case to the jury on the theory of felony-murder.

5. *Jury instructions on specific unanimity regarding theory of culpability.* The defendant argues that the judge violated both his Federal and State due process rights and equal protection rights by denying his motion to instruct the jury that they must agree unanimously on one or more theories of

culpability before finding the defendant guilty of murder in the first degree.[12] Because trial counsel objected to the judge's refusal to make the requested instruction, the standard of review is whether the judge committed reversible error.[13] See *Commonwealth* v. *Dunton*, 397 Mass. 101, 102-

---

[12]We note the distinction between an instruction requiring specific unanimity among the jurors on the underlying factual issues where alternate episodes could support a finding of guilty and unanimity among the jurors on the theory of culpability where a single offense contains several different theories of culpability. See *Schad* v. *Arizona*, 501 U.S. 624, 632 (1991); *People* v. *Cooks*, 446 Mich. 503, 515 n.16 (1994). In *Commonwealth* v. *Ramos*, 31 Mass. App. Ct. 362, 367 (1991), the Appeals Court recognized the distinction stating that "[u]nlike those cases in which evidence of separate occurrences came before the jury, and a specific unanimity instruction was, therefore, indicated, in this case there was evidence of but one event. In the context of that event the jury had alternative theories upon which to find the defendant guilty . . . ." See *Commonwealth* v. *Comtois*, 399 Mass. 668, 676-677 (1987) (defendant entitled to instruction on specific unanimity where criminal conduct occurred on divers dates); *Commonwealth* v. *Conefrey*, 37 Mass. App. Ct. 290, 294, further appellate review granted, 418 Mass. 1110 (1994) (jurors must agree unanimously on which specific act constitutes offense charged); *Commonwealth* v. *Lemar*, 22 Mass. App. Ct. 170, 172 (1986) (considering necessity of specific unanimity instruction where Commonwealth alleged three separate criminal episodes). In *Ramos*, the Appeals Court held that such an instruction was not required. *Id.*, citing *Schad* v. *Arizona*, *supra.*

[13]While instructing the jury on the three distinct theories of first degree murder, the judge stated that "so long as you as an individual juror are convinced beyond a reasonable doubt of any one of these alternative theories of murder in the first degree, you are warranted in supporting such a verdict." Trial counsel properly preserved the issue of juror unanimity for appellate review by complying with the third sentence of Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979), which states that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection." While previewing the preliminary instructions in the lobby with the judge and the prosecutor, trial counsel indicated that if he could find a case to support his argument, then he would object to the judge's failure to instruct the jury that they must agree unanimously on the theory of first degree murder in order so to convict the defendant. At trial, the judge rejected the defendant's request for an instruction that the jury must select the theory of first degree murder on which the conviction would be based and noted the defendant's objection.

103 (1986). Cf. *Commonwealth* v. *Rodwell*, 394 Mass. 694, 698 n.2 (1985).

We have stated that "[i]t is beyond dispute that the jury verdict in a criminal trial . . . must be unanimous." *Commonwealth* v. *Hebert*, 379 Mass. 752, 754 (1980), citing *Brunson* v. *Commonwealth*, 369 Mass. 106, 120 (1975); Mass. R. Crim. P. 27 (a), 378 Mass. 897 (1979). In addition, it is axiomatic that the due process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). See *Carella* v. *California*, 491 U.S. 263, 265 (1989). On the other hand, we have adhered for many years to the rule that "a general verdict of murder in the first degree [is] properly returnable without special finding of the particular manner in which it was committed" when an indictment charges only a single offense. *Commonwealth* v. *Devlin*, 335 Mass. 555, 567-568 (1957).[14] Also, a plurality of the Supreme Court of the United States has held that the Fourteenth Amendment does not prohibit a State from defining first degree murder by the alternate theories of premeditated murder and felony-murder. See *Schad* v. *Arizona*, 501 U.S. 624, 644-645 (1991).[15]

There was no reversible error here, and we need not decide whether there is a constitutional requirement of unanimity, because it is clear in this case that the jury were unanimous

---

[14]In *Commonwealth* v. *Devlin*, 335 Mass. 555, 567-568 (1957), we stated that because "[an] indictment charged only a single offence, a general verdict of murder in the first degree was properly returnable without special finding of the particular manner in which it was committed."

[15]In *Schad* v. *Arizona*, *supra* at 644-645, the Supreme Court of the United States considered the constitutionality of an Arizona criminal statute that defined first degree murder as a single crime with alternative theories of culpability: premeditated murder or felony-murder. Instead of focusing on the issue of juror unanimity, the plurality of the Court in *Schad* framed the issue as to whether it was permissible under the due process clause for Arizona to define first degree murder as either premeditated murder or felony-murder. *Id.* Nevertheless, the result of the plurality decision in *Schad* is that the due process clause does not require juror unanimity on the theory of culpability. *Id.*

in their verdict of guilty of murder in the first degree under the felony-murder rule. The defendant was charged with two crimes: murder and burglary with actual assault. The jury agreed unanimously that the defendant was guilty of burglary with actual assault. Burglary with actual assault can serve as the underlying felony for a felony-murder conviction.[16] See *Commonwealth* v. *Claudio, supra* at 107-109. In addition, the jury agreed unanimously that the defendant was guilty of murder in the first degree. On the facts of this case, in which the assault consisted of stabbing the victim with a butcher knife, it is not plausible to conclude that the defendant committed the assault, as the jury found, but that the jury did not also find beyond a reasonable doubt that the stabbings caused the victim's death. Any juror who found the defendant guilty of deliberately premeditated murder, obviously found that the stabbing caused the death. The stabbing was a part of the underlying felony. Thus, we conclude unavoidably that the jury unanimously found the elements necessary to find this defendant guilty of felony-murder in the first degree.

We conclude that, hereafter, as a matter of common law, when requested, a judge should give an instruction to the jury that they must agree unanimously on the theory of culpability where the defendant has been charged with murder in the first degree.[17]

---

[16]Because we affirm the defendant's conviction on the theory of felony-murder, we decline to address the defendant's claim that the judge erred in his charge to the jury on extreme atrocity or cruelty.

[17]We note that several courts already have concluded that jurors must agree unanimously on the theory of culpability where the offense charged contains more than one theory. See, e.g., *United States* v. *Correa-Ventura*, 6 F.3d 1070, 1080 n.16 (5th Cir. 1993); *United States* v. *North*, 910 F.2d 843, 875 (D.C. Cir. 1990); *United States* v. *Beros*, 833 F.2d 455, 462 (3d Cir. 1987); *State* v. *Famiglietti*, 219 Conn. 605, 619-620 (1991); *Probst* v. *State*, 547 A.2d 114, 121-122 (Del. 1988); *State* v. *Prouse*, 244 Kan. 292, 298-299 (1989); *People* v. *Embree*, 70 Mich. App. 382, 383 (1976); *State* v. *Bzura*, 21 N.J. Super. 602, 612-615 (App. Div. 1993); *State* v. *Boots*, 308 Or. 371, 375-377 (1989), modified and remanded, 315 Or. 572, cert. denied, 510 U.S. 1013 (1993); *State* v. *Seymour*, 177 Wis. 2d 305, 312 (Ct. App. 1993). Contrast *Suniga* v. *Bunnell*, 998 F.2d 664, 668 (9th Cir.

6. *Instruction on the effect of drugs and alcohol on the defendant's mental state.* The defendant claims that the judge erred in his instructions to the jury regarding the effects of the consumption of alcohol or drugs on the proof of the defendant's mental state.[18] Because the defendant failed to object to the alleged error at trial, we review the entire charge to determine whether there was a substantial likelihood of a miscarriage of justice. See G. L. c. 278, § 33E. There was no reversible error. Having reviewed the entire charge, we think that the judge properly instructed the jury in accordance with our law.

7. *Duplicative convictions.* The judge imposed concurrent sentences on the defendant for the first degree murder conviction and the burglary with actual assault conviction. On appeal, the defendant has not challenged these sentences as duplicative. Nevertheless, we have stated that "whenever the possibility exists that a jury might have reached a verdict of murder . . . on the basis of a felony-murder theory, a consecutive sentence may not be imposed for the underlying felony." *Commonwealth* v. *Wilson,* 381 Mass. 90, 124 (1980). The appropriate remedy for such duplicative convictions is to vacate both the conviction and the sentence on the lesser included offense, and to affirm the sentence on the more serious offense. See *Commonwealth* v. *Crocker,* 384 Mass. 353, 358 n.6 (1981). We have extended this remedy not only to duplicative convictions resulting in consecutive sentences, but also

---

1993); *People* v. *Marquez,* 692 P.2d 1089, 1099-1100 (Colo. 1984); *People* v. *Sullivan,* 173 N.Y. 122, 127-128 (1903); *State* v. *Tillman,* 750 P.2d 546, 566 (Utah 1988), denial of habeas corpus aff'd sub nom. *Tillman* v. *Cook,* 855 P.2d 211 (Utah 1993), cert. denied, 510 U.S. 1050 (1994); *State* v. *Franco,* 96 Wash. 2d 816 (1982); *Bouwkamp* v. *State,* 833 P.2d 486, 496 (Wyo. 1992).

[18]The defendant argues that the judge's instruction, that, "[i]f the Commonwealth has proved such premeditation beyond a reasonable doubt, the fact that the defendant was to some degree impaired by alcohol or drugs would not excuse his actions," could have caused the jury to conclude that if the Commonwealth had proved premeditation beyond a reasonable doubt, then mental condition could not be considered.

to those resulting in concurrent sentences. See *Commonwealth* v. *Jones*, 382 Mass. 387, 395-396 (1981).

In the present case, the jury convicted the defendant of both first degree murder and burglary with actual assault. As a result, we have concluded that the jury agreed unanimously that the defendant was guilty of first degree murder on a theory of felony-murder. Based on this conclusion, however, it is clear that the conviction on the underlying felony of burglary with actual assault is duplicative. See *Commonwealth* v. *Wilson, supra.* We vacate, therefore, both the conviction and concurrent sentence on the underlying felony of burglary with actual assault. See *Commonwealth* v. *Jones, supra.* Nevertheless, we affirm the conviction on the charge of murder in the first degree. See *Commonwealth* v. *Crocker, supra.*

8. *G. L. c. 278, § 33E.* Although the trial was not error free, particularly in the judge's refusal to instruct the jury that they must agree unanimously on the theory of culpability in order to convict the defendant of first degree murder, we conclude that the conviction on the charge of first degree murder should be affirmed. See *Commonwealth* v *Graves*, 363 Mass. 863, 872-873 (1973), quoting *Brown* v. *United States*, 411 U.S. 223, 231-232 (1973). We see no basis for exercising our authority under G. L. c. 278, § 33E, to grant a new trial or to order that the verdict be reduced. The evidence was overwhelming that the defendant had committed both the underlying felony of burglary with actual assault and the unlawful killing. Thus, the evidence warranted the conclusion that the defendant was guilty of first degree murder.

Accordingly, we vacate the judgment of conviction of burglary with actual assault and the sentence imposed thereon. The judgment of conviction of murder in the first degree is affirmed.

*So ordered.*