COMMONWEALTH *vs.* PATRICK BLACKWELL.

Suffolk. December 6, 1995. - March 15, 1996.

Present: LIACOS, C.J., WILKINS, O'CONNOR, GREANEY, & FRIED, JJ.

*Homicide. Malice. Intent. Felony-Murder Rule. Practice, Criminal,* Instructions to jury, Capital case.

In a murder case, alleged error in the judge's instructions to the jury on malice and erroneous instructions on extreme atrocity or cruelty were not prejudicial where the judge had correctly instructed on the alternative theory of felony-murder and on the underlying felony of armed robbery of which the jury convicted the defendant: the jury must necessarily have found the defendant guilty on the theory of felony-murder. [298-301] LIACOS, C.J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on May 23, 1991.

The cases were tried before *Suzanne V. DelVecchio,* J.

*Willie J. Davis* (*Marie Elena Saccoccio* with him) for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

FRIED, J. The defendant, Patrick Blackwell, was convicted of the murder in the first degree of Marcel Andrews in the commission of a robbery. Though Blackwell was not the shooter, he was found guilty on a theory of a joint venture with the other three men who participated in the robbery. Blackwell was also convicted of assault and battery by means of a dangerous weapon, armed assault with intent to rob, armed robbery while masked, and breaking and entering a dwelling at night with intent to commit a felony and making an armed assault therein. Blackwell complains principally that the murder in the first degree conviction must be reversed because of faulty instructions on extreme atrocity or cruelty, and that, if that conviction is overturned, the other convictions also cannot stand. Although we agree that the trial judge's instruc-

tions on extreme atrocity or cruelty were faulty, we conclude that in the circumstances of this case, the jury, having been instructed correctly on felony-murder, must necessarily have rendered a verdict on that ground. Accordingly, we affirm.

# I

## A

We set forth the facts in the light most favorable to the Commonwealth. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). On February 9, 1991, Lorna Pleas resided in a two-bedroom apartment at 798 Tremont Street in the South End section of Boston. The building itself consisted of four units, one on each floor. Pleas lived with her son and daughter on the third floor, though on February 9 her daughter was staying with Pleas's mother who lived two doors away. Marcel Avery Andrews, nicknamed "Temper," and Michael Stevens also stayed in the apartment that night. The apartment is a front-to-back apartment. The front door to the apartment opens into a hallway. The living room and kitchen are to the right, in the front of the apartment overlooking Tremont Street. Two bedrooms and a bathroom are down the hallway to the left, toward the rear of the apartment building.

Pleas and her son were staying in one bedroom and Stevens was in the other. Andrews was in the living room on the couch. At 4:50 A.M., Pleas heard a loud, continuous knocking at the front door. She went to the door with Andrews, and when she looked through the peephole she saw the defendant, whom she knew as "Mosquito." She knew the defendant because she had purchased clothing from him. She unlocked the door and opened it slightly. The defendant asked Andrews if he had any drugs, and Andrews said he did not. Then the defendant asked Pleas if he could use the bathroom. Pleas opened the door, let the defendant in, and closed the door without locking it. The defendant went to the bathroom, and Pleas and Andrews went to the living room.

The defendant was coming toward the living room when Pleas heard "a bang." Three men wearing dark clothing with hoods shielding their faces burst into the apartment. The defendant said, "Everybody get on the floor. This is a stickup." Someone brought Stevens into the living room. Stevens sat in front of the kitchen table, and Pleas sat with Andrews next to

the window. The defendant asked Andrews, "Where's the shit at?" Andrews responded, "You come to rob me, and you expect me to give you something that I don't have for you?" Pleas asked the defendant, "What are you going to take, this big t.v.?" The defendant told Pleas to "shut the fuck up, and just cover your face." Pleas "slightly" covered her eyes with her hands, but she did not "cover them all the way."

One of the men came into the room from the hallway and took Andrews's "gold rope" off a table. The defendant then told this same man, "Don't bother her, just leave her alone." And then the defendant said, "Shoot that motherfucker." Pleas saw one of the men brandishing a silver revolver and standing next to the defendant. She heard three shots; Andrews rolled to the kitchen floor and lay there. There was a pause and then a fourth shot. The defendant and the three hooded men then fled the apartment, gathering for a moment outside and then fleeing the area, three running one way and one running in the opposite direction. Stevens remained in the apartment while Pleas grabbed a towel and wrapped it around Andrews's head. Andrews was still breathing at this point. Pleas then ran to her mother's apartment and called the police and an ambulance. She returned to her apartment with the police directly behind her and learned that Stevens had also been shot.

Five nights later, on February 14, Catherine Pleas, Lorna Pleas's sister and also a casual acquaintance of the defendant, was in a bar when the defendant walked up to her and told her that he had "wrecked up" the third-floor apartment on Tremont Street and shot "Temper." He further stated that "he didn't mean to do it — but that he thinks [Temper's] dead." The police made a full investigation, and both Catherine and Lorna Pleas identified the defendant in a photographic array. An autopsy report revealed that Andrews died from a single gunshot wound to his head with no other injuries to his body. Stevens suffered injuries from a gunshot wound to his foot, but he did not testify.

### B

The relevant grand jury indictments read as follows:

"PATRICK BLACKWELL, on February 9, 1991, did assault and beat one Marcel Andrews, with intent to

murder him, and by such assault and beating did kill
and murder the said Marcel Andrews."

"PATRICK BLACKWELL, on February 9, 1991, be-
ing masked and armed with a dangerous weapon to wit:
a handgun, did assault Marcel Andrews with intent to
rob him and thereby did rob and steal from the person
of the said Marcel Andrews, a gold chain of a value un-
known to the said JURORS, of the property of the said
Marcel Andrews."

"PATRICK BLACKWELL, on February 9, 1991, at
Boston aforesaid, the dwelling house of one Lorna Pleas
there situate, in the night time of said day, did break
and enter with intent then and therein to commit a
felony, to wit: robbery, and did then and therein make
an actual assault upon Marcel Andrews who was then
lawfully therein, the said Patrick Blackwell being armed
with a dangerous weapon, to wit: a handgun at the time
of such breaking and entering."

The judge explained that murder in the first degree is mur-
der committed with deliberately premeditated malice afore-
thought, murder committed with extreme atrocity or cruelty,
or a killing which occurs during the commission or attempted
commission of certain felonies. The judge instructed the jury
that malice aforethought is "any unexcused specific intent to
kill or unexcused specific intent to do grievous bodily harm,
or unexcused intent to do an act creating a plain and strong
likelihood that death or grievous bodily harm will fol-
low. . . . [It] refers to a frame of mind which includes not
only anger, hatred, and revenge, but also every other unlaw-
ful and unjustifiable motive. It is an intent to inflict injury
without legal justification." On felony-murder she instructed
that "the intent to commit the underlying felony — and in
this case, the underlying felony is armed robbery . . . is
substituted for the element of malice aforethought required
for murder." The judge also instructed the jury on joint
enterprise liability, which was important in this case because
the testimony was that Blackwell did not do the shooting but
ordered the shooting.

Defense counsel objected to the mention of extreme atroc-

ity or cruelty and had objected to the order in which the judge defined murder. The defendant had sought to have malice aforethought defined first and then the degrees of murder. The judge began her murder instructions with the general definition of murder and then malice aforethought. There were no other objections to these particular instructions, and there was no objection to the joint enterprise instructions.

The judge then added an instruction on extreme atrocity or cruelty that included the following statements: "[T]hat the method of causing death surpassed the cruelty inherent in the taking of a human life. The jury may consider, number one, the awareness and length of suffering of the victim; and number two, the use of extraordinary force; number three, the choice of weapon or weapons; and number four, the extent of the injury." The defense objected to the giving of this instruction.

During their deliberation the jury requested clarification of the distinction between first and second degree murder. In a supplemental instruction the judge gave the entire murder instruction again and added: "[E]xtreme atrocity or cruelty is not limited to cases with [evidence of the factors I gave you to consider]. A murder may be committed with extreme atrocity or cruelty even though death may result from a single blow." The defense once again objected.

After deliberating for a total of fifty-four minutes following the supplemental instruction, the jury returned verdicts of guilty of, among other indictments, the three set out above. The verdict slip did not specify the theory or theories of murder in the first degree that the jury had accepted. Neither party had requested such a specification.

## II

Blackwell agrees that the judge stated correctly the law on malice aforethought, except that he complains that, although he did not object to it at trial, the judge should not have included in the original and supplemental charge the "frame of mind" language quoted above. The addition of this language is not helpful, and we reiterate our strictures against its use. See *Commonwealth* v. *Torres*, 420 Mass. 479, 486-487 (1995); *Commonwealth* v. *Eagles*, 419 Mass. 825, 836 (1995). But we do not hold that the use of this language all by itself would require a reversal on the ground that it creates a

substantial likelihood of a miscarriage of justice. In this case, as we explain below, the murder in the first degree conviction is necessarily and "unavoidably," *Commonwealth* v. *Berry*, 420 Mass. 95, 112 (1995), supported by the felony-murder charge, and so we readily conclude that the inclusion of the "frame of mind" language, to which the defendant did not object at trial, did not create a substantial likelihood of a miscarriage of justice.

Among the other claims the defendant raises, the most serious are that the judge should not have charged as to extreme atrocity or cruelty at all because there was insufficient evidence to support such a charge, and the judge's definition of extreme atrocity or cruelty was substantively incorrect. The defendant objected quite clearly both at the time that the original charge was given and again when the judge returned to the subject in response to the jury's request for clarification during their deliberations. The defendant's objection was well taken, and therefore, unless we can conclude that the error was not prejudicial, we must reverse.

The judge's error was to put before the jury the factors that make out extreme atrocity or cruelty we first set out in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983), and reiterated in *Commonwealth* v. *Freiberg*, 405 Mass. 282, 289, cert. denied, 493 U.S. 940 (1989), and then to add in effect that these factors were only illustrative and that the jury might find extreme atrocity or cruelty in the absence of even a single one of those factors. The defendant argues that such an instruction relieves the Commonwealth of its burden of proving extreme atrocity or cruelty beyond a reasonable doubt. In a case where the result depended on it, the open invitation extended by the judge to the jury to find extreme atrocity or cruelty in the absence of even one of the *Cunneen* factors would be reversible error. See *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994). In the instant case, the result does not depend on it, and so we reject the defendant's contention that his conviction violates due process as guaranteed by the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.

For the same reason we need not reach Blackwell's other contention that, as matter of law, evidence of a single shot to the head with no other signs of injury is insufficient to support a charge of extreme atrocity or cruelty. Although Black-

well's contention may be correct in this case, we are not prepared to announce this as a rule of law, since we cannot now imagine all the circumstances in which the *Cunneen* factors might be satisfied by such a single gunshot.

The jury were correctly charged on both the felony-murder and on the underlying felony of armed robbery, and accordingly necessarily and "unavoidably," *Commonwealth* v. *Berry, supra,* found Blackwell guilty of felony-murder. Therefore, the errors in respect to alternate and additional routes to the verdict of murder in the first degree — deliberate premeditation and extreme atrocity or cruelty — are not prejudicial.[1] First, the jury were properly instructed that "in order to prove the defendant guilty of felony murder, you must be persuaded beyond a reasonable doubt that the defendant committed the offense of armed robbery, and that the killing occurred during the commission of the armed robbery." Second, the jury found on a separate indictment charging the underlying felony in the felony-murder charge that Blackwell was guilty of assaulting the victim, while masked and armed, with intent to rob him. Third, the jury necessarily found that the victim had been killed and that Blackwell was responsible for the victim's death under a theory of joint venture. Although there are circumstances in which a jury properly may convict on the underlying felony and yet acquit on felony-murder, as when the felony and the killing are not sufficiently related, that is not the case here where, as in *Commonwealth* v. *Berry, supra,* the jury necessarily found every element of felony-murder, on which they had been properly charged. Thus they necessarily found the defendant guilty of murder in the first degree.[2]

The dissent balks at our drawing the inference as to what

---

[1]The defendant asserts that *Yates* v. *United States,* 354 U.S. 298 (1957), overruled on other grounds, *Burks* v. *United States,* 437 U.S. 1, 18 (1978), controls the resolution of this issue. However, the instant case differs from *Yates, supra* at 312, where it was "impossible to tell [on] which ground the jury selected" to convict the defendant, and one of the possible grounds was constitutionally infirm. *Id.*

[2]This logic requires that the assault charged in the armed robbery indictment and found by the jury must be the same as, or at least be sufficiently causally related to, the killing which was necessarily found by the jury on any of the murder theories presented to them. That killing, of course, followed directly on Blackwell's order, "Shoot that motherfucker." There was no evidence of any other assault on the victim, unless Blackwell's order to "[s]hoot that motherfucker" or perhaps even the prior order that the oc-

the jury necessarily found. We appreciate the dissent's unease in engaging in such an exercise, although its outcome here seems inescapable and therefore, unless we attribute an utter irrationality to the jury, we in no way dishonor the jury's prerogatives or prejudice the defendant by our conclusion. But this is an exercise we should not have to engage in, and it could have been readily avoided if only separate answers had been provided. See *Commonwealth* v. *Licciardi*, 387 Mass. 670, 675-677 (1982).

### III

The evidence in this case is relatively straightforward. As we have explained, the errors in the trial did not prejudice Blackwell nor affect its outcome. And there is nothing in the record nor in Blackwell's conduct that suggests that this court should exercise its power under G. L. c. 278, § 33E (1994 ed.), to order a new trial or reduce the verdict to murder in the second degree.[3]

*Judgments affirmed.*

LIACOS, C.J. (dissenting). I agree with the court that the jury instructions at Blackwell's trial contained three distinct errors. The judge (1) defined malice in terms of "frame of mind" contrary to *Commonwealth* v. *Torres*, 420 Mass. 479, 486-487 (1995); (2) gave a vague definition of "extreme atrocity or cruelty" held defective in *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994); and (3) allowed the jury to consider culpability on a theory of extreme atrocity or cruelty, which the evidence did not support. Yet even in the face of those three serious errors, see *Commonwealth* v. *Glass*, 401

cupants "get on the floor[, because t]his is a stickup," might count as assaults. But these actions, if assaults, are causally related to the killing or the killing is within the res gestae of this conduct, all of which was part of the robbery. See *Commonwealth* v. *Ortiz*, 408 Mass. 463, 466-467 (1990); *Commonwealth* v. *Matchett*, 386 Mass. 492, 505 (1982); *Commonwealth* v. *Ambers*, 370 Mass. 835, 839 (1976).

[3]The defendant also asks that we reverse the other convictions on the ground that the jury could not fairly judge these charges, having improperly found him guilty of murder in the first degree. Because the premise of that argument fails and because we find no independent errors in respect to these convictions, they too are affirmed.

Mass. 799, 804 (1988) (error not prejudicial only if jury's consideration of premeditation theory was "substantially unsullied" by inappropriate submission of extreme atrocity or cruelty theory to jury), the court arrives at the conclusion that no remedy is warranted — the errors did not create a substantial risk of a miscarriage of justice.

In my view these errors were prejudicial, regardless of how "straightforward" the evidence may seem. See *ante* at 301. The right to trial by jury "embodies 'a profound judgment about the way in which law should be enforced and justice administered.' " *Carella* v. *California*, 491 U.S. 263, 268 (1989) (Scalia, J., concurring in judgment), quoting *Duncan* v. *Louisiana*, 391 U.S. 145, 155 (1968). *Commonwealth* v. *Skinner*, 408 Mass. 88, 97 (1990). Of course, it is possible that the jury may have based the guilty verdict on premeditation, see *Commonwealth* v. *Wallace*, 417 Mass. 126, 134-135 (1994) (error in malice instruction was nonprejudicial in light of premeditation theory), or felony-murder. On the other hand, this court has no sure way of knowing whether the inappropriate and erroneous extreme atrocity instruction carried the day in the jury room. "[W]here the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected," the verdict should be set aside. *Yates* v. *United States*, 354 U.S. 298, 312 (1957) (Harlan, J.), overruled on other grounds, *Burks* v. *United States*, 437 U.S. 1, 18 (1978). See *Commonwealth* v. *Matchett*, 386 Mass. 492, 511 (1982).[1] It is not appropriate in

---

[1]The court correctly notes that the Supreme Court has limited this rule to cases where the tainted conviction is legally infirm, as opposed to a "mere" insufficient evidence problem. See *Griffin* v. *United States*, 502 U.S. 46, 56 (1991) (in absence of legal error, jury presumed to have found insufficient evidence did not support guilty verdict, so that jury must have convicted only on factually sufficient grounds). It is true that one of the errors here was "factual" — that there was insufficient evidence to support extreme atrocity or cruelty. However, one other relevant error — the *Hunter* error — is legal and therefore the rule of *Yates* v. *United States*, 354 U.S. 298, 312 (1957), overruled on other grounds, *Burks* v. *United States*, 437 U.S. 1, 18 (1978), unquestionably applies. Furthermore, our case law suggests that we may apply this rule even to insufficiency problems. See *Commonwealth* v. *Flynn*, 420 Mass. 810, 818 (1995).

this case for appellate judges who examine a cold record to do away with the jury of citizens, who share a courtroom with the defendant and the witnesses, to conduct, in effect, a retrial based on their speculation as to what the jury may have thought. See *Carella, supra* at 267.

It is true that in a narrow set of cases even instructional error can be found not prejudicial, because other verdicts can show what the jury actually concluded. In such an instance, an appellate court may be able to analyze carefully the jury charge and the evidence and find a precise path, free of error, that the jury took to reach their conclusion of guilty beyond a reasonable doubt. See, e.g., *Wallace, supra.*

Here, the court purports to carve such a path through a complex case of joint venture liability and an underlying felony with a host of lesser included offenses. I begin, as does the court, with the definition of felony-murder — (1) a homicide (2) committed during (3) the commission of a prerequisite felony. *Commonwealth* v. *Pope*, 406 Mass. 581, 584 (1990). While the court can logically discern unanimous jury findings as to (1) the killing and (3) the prerequisite felony, armed robbery while masked, still missing is the "committed during" portion of the definition of felony-murder.

The court concludes that the jury *in fact* found this causal link because only two of Blackwell's actions could be considered assaults, and both allegedly have a sufficient causal link to the deaths. *Ante* at 300-301 n.2. This analysis ignores the fact that the armed robbery conviction necessarily rests on a joint venture theory (Blackwell was neither armed nor masked), not a direct assault by Blackwell. The jury could have rested their separate verdict on any action of the armed accomplice that amounted to assault. This opens a real likelihood that the precise events that the jury found sufficiently proved to demonstrate assault (as a component of the separate robbery conviction) were not the cause of the victim's death. The court relies on *Commonwealth* v. *Berry*, 420 Mass. 95, 111-112 (1995), where a similar analysis identified a single, error-free, unanimous basis for a verdict. That case, however, did not involve the complexities of joint venture liability and the facts contained only one set of events that could support

the separate assault conviction.[2] Here the court has supplied a factual finding that we cannot be certain the jury themselves made — that the killing was "committed during" the precise events comprising the underlying felony.[3]

It matters not whether the evidence is "straightforward." The simplest of fact patterns can encapsule the thickest morass of legal theories. It is the legal theory of the case as tried to which the jury must apply the facts. That path must be straightforward if we judges are legitimately to be able to discern a particular path that the jury took to the verdict. No such path properly can be discovered in this case. The defendant is entitled to a new trial. I dissent.

---

[2] I did not participate in *Commonwealth* v. *Berry*, 420 Mass. 95 (1995). My comments on the court's use of that case are intended only to show it distinguishable. This trial occurred before the *Berry* decision, and the defense here did not request a unanimity instruction as to the theory of liability. Without such a request the lack of a unanimity instruction was not error on the basis of the common law theory set forth in *Berry, supra* at 112.

[3] There was one other unanimous jury "finding" that the court claims to discern from the verdicts — that the defendant "was responsible for the victim's death under a theory of joint venture." *Ante* at 300. This cannot be used as a functional equivalent for the causation requirement of felony-murder. A joint venture theory can support a premeditation verdict, with the order to shoot demonstrating knowledge of cool reflection and assistance. E.g., *Commonwealth* v. *Cohen*, 412 Mass. 375, 380-381 (1992). The finding of joint venture responsibility demonstrates how the jury might have found a shared mens rea to kill the victim with premeditation. It does not show that Blackwell shared the mens rea for an armed robbery during which the killing occurred.